COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Haley and Alston
Argued at Alexandria, Virginia


DAVID DWIGHT de HAAN

                                                     OPINION BY
v.        Record No. 2268-08-4              JUDGE JAMES W. HALEY, JR.
                                                  AUGUST 4, 2009
LYNN CAROL HOLMBECK de HAAN


             FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                    Brian M. Hirsch, Judge *Pro Tempore*

        Demian J. McGarry (Gwendolyn Jo M. Carlberg; The Carlberg Law
        Firm, on brief), for appellant.

        John K. Cottrell (Cottrell Fletcher Schinstock Bartol & Cottrell, on
        brief), for appellee.


                              I.  INTRODUCTION

        In this domestic relations appeal, David de Haan ("father") argues the lower court erred

in (1) holding the decision of a judge *pro tempore* was final instead of *pendente lite*; (2) granting

Lynn Holmbeck de Haan ("mother") primary custody of the parties' children; and (3) declining

to enjoin mother from relocating with the children.[1]  We hold that since the appealed order did

not resolve all issues, it represents an interlocutory order over which we have limited subject

matter jurisdiction.  We further hold that since the order left several main objects of the divorce

suit unresolved, the order did not adjudicate "the principles of a cause" within the meaning of

---

    [1] On brief, father claimed the judge *pro tempore* also erred by imputing income to him
for child support purposes and requiring him to make *pendente lite* payments on the marital
home without contribution from mother.  However, at oral argument, father's counsel withdrew
these arguments.

Code § 17.1-405(4) and, therefore, we lack subject matter jurisdiction to hear the appeal. Accordingly, we dismiss the appeal without prejudice.

## II. BACKGROUND

The parties married in 1994. They have three surviving minor daughters. Another daughter died as an infant. The parties separated in March 2008. At that time, father was a stay at home parent and a retired major in the Army. Mother was a lieutenant colonel on active duty in the Air Force Reserve.

Mother filed a complaint seeking divorce in the Circuit Court of Fairfax County. In addition to the divorce, mother's complaint sought custody of the children, child support, equitable distribution, exclusive possession of the marital home and contribution for its maintenance, an injunction against wasting or dissipating marital assets, and attorney fees. Father soon filed his answer to the complaint and a counterclaim for divorce, essentially seeking the same relief as mother. Both parties filed motions for *pendente lite* relief, and father filed a motion to enjoin mother from relocating with the children to the Norfolk/Virginia Beach area.

The parties agreed to employ a judge *pro tempore* to adjudicate certain areas more rapidly than they would otherwise be heard under the circuit court scheduling system. The circuit court agreed to the designation of a judge *pro tempore* and entered an order appointing one on May 12, 2008. The order provided the judge *pro tempore* with authority to adjudicate nine areas:

> i. Enforcement of Pre-Marital Agreement of January 20, 1994
>
> ii. Custody of the parties' three children
>
> iii. Child support
>
> iv. Designation of parenting time between Plaintiff and Defendant

- 2 -

> v.      Injunction from removal of the parties' three children from the County of Fairfax, Virginia, by the Plaintiff
>
> vi.      Injunction from dissipating or wasting marital assets or increasing debts for which the other party would be liable
>
> vii.      Exclusive use of the marital home
>
> viii.      Exclusive use of the Nissan Quest mini-van
>
> ix.      Award of attorney's fees, expenses, and costs[.]

The order contained no limit on the authority over these areas. Rather, the order stated that the "judge *pro tempore* is hereby appointed and vested with the same power and authority and is hereby charged with the same duties as to the cause in and as to which he is appointed as if he were a regularly elected and qualified judge of this Court." Brian Hirsch was the person appointed judge *pro tempore*.

The judge *pro tempore* held an *ore tenus* hearing on the relevant issues from May 15-16, 2008, during which he received extensive evidence. Given our disposition of this case, most of it lacks relevance to this opinion. However, we note that while mother worked at the Pentagon at the time of the hearing, she had received orders to transfer to a position in Norfolk, Virginia. Mother's testimony suggested that after accepting the Norfolk position, she had no choice but to move. She testified: "Whether or not I'm awarded custody, I have to move to Norfolk. I've taken an oath and I've accepted the orders." While working in Norfolk, mother planned to reside in nearby Virginia Beach. These facts have relevance to this opinion because of father's desire to prohibit mother from relocating there with the children.

The judge *pro tempore* issued a letter opinion on May 21, 2008. The opinion noted the nine areas of jurisdiction the parties asked him to resolve. It also stated "[t]he parties filed cross motions for *pendente lite* relief, essentially asking for the above [nine areas of] relief."

Concerning custody, the judge *pro tempore* considered each of the statutory factors and awarded the parties joint legal custody, with mother having primary physical custody of the children during the school year and shared custody during the summer. The letter opinion contained a detailed custody arrangement, which was obviously intended to be final on the issue.[2] When deciding custody, the judge *pro tempore* assumed mother's relocation as inevitable, specifically noting it was from "Mother's impending move that this hearing arose." The judge *pro tempore* again indicated the inevitability of mother's move in another portion of his opinion. In spite of this inevitability, the judge *pro tempore* granted mother permission to relocate with the children to the Norfolk/Virginia Beach area, denying father's request for an injunction prohibiting the move.

Regarding child support, the judge *pro tempore* accepted evidence presented by mother on father's earning potential and imputed father with income "after September 30, 2008," with the amount of income depending on where father chose to reside. If father remained in the Northern Virginia area it would be $75,000, or if he moved to be closer to the children it would be $65,000. The letter opinion called for child support to be "recalculated in September 2008."

Other relevant provisions of the letter opinion involve the disposition of marital property. The judge *pro tempore* enjoined the parties from "dissipating or wasting marital assets," but expressly declined "to classify the parties' assets as marital, separate and hybrid." The judge *pro tempore* asked the parties to consult each other on items mother could remove from the marital house. However, the opinion held that "[t]o the extent the parties are unable to agree upon a temporary division of property . . . this issue shall be decided at the parties' equitable distribution

---

[2] Statements from the hearing clearly reveal the parties' intention that the judge *pro tempore*'s custody decision be final on that issue. At one point, the judge *pro tempore* sought to confirm the hearing was only for *pendente lite* purposes, "not a final hearing." Mother's counsel responded: "It is on the custody portion, Your Honor." Father's counsel made no challenge to this assertion.

hearing or by written agreement." The opinion also stated that "removal of such furnishings by the Mother or the retention of same by the Father shall be without prejudice to a final disposition of the parties' furnishings."

The judge *pro tempore* concluded by requesting mother's counsel to prepare an order consistent with the letter opinion.

Asserting the hearing and letter opinion of the judge *pro tempore* involved only a *pendente lite* disposition on custody, father's counsel requested the circuit court to set a date for a final hearing on custody. A Fairfax County Circuit Court judge denied this request on a calendar control form dated June 3, 2008. The order stated: "Defendant's Request for hearing date on custody. It's opposed. This has been decided." That judge also wrote: "Appeal from final order of Judge *Pro Tem* is to the Court of Appeals."

The next relevant order was entered on July 14, 2008. The order set a final hearing on equitable distribution, spousal support, and child support for April 8, 2009. However, at oral argument, this Court learned this hearing was stayed pending the appeal.

The judge *pro tempore*'s letter opinion was reduced to an order on August 22, 2008, entitled "FINAL ORDER BY JUDGE *PRO TEMPORE*" ("the August 22 order"). The order essentially granted the relief provided by the letter opinion verbatim, with only minor variation. One of those variations to note is that the order called for mother to submit evidence of her child care costs at her new home.[3] This was to facilitate the recalculation of child support in September 2008 called for by the letter opinion and incorporated into the order.

Father now appeals from the August 22 order.

---

[3] The letter opinion simply stated that "daycare costs in Norfolk are uncertain at this point and it is premature to calculate same."

III.  ANALYSIS

It is axiomatic that before considering the merits of a case, we must have subject matter jurisdiction.  Comcast of Chesterfield County, Inc. v. Bd. of Supervisors of Chesterfield County, 277 Va. 293, 299, 672 S.E.2d 870, 872 (2009).  Orders entered without subject matter jurisdiction are void and may be challenged "'directly or collaterally by all persons, anywhere, at any time, or in any manner.'"  Singh v. Mooney, 261 Va. 48, 52, 541 S.E.2d 549, 551 (2001) (quoting Barnes v. Am. Fertilizer Co., 144 Va. 692, 705, 130 S.E. 902, 906 (1925)).  Moreover, "'[n]either the consent of the parties, nor waiver, nor acquiescence can confer'" subject matter jurisdiction.  Bd. of Supervisors of Fairfax County v. Bd. of Zoning Appeals of Fairfax County, 271 Va. 336, 344, 626 S.E.2d 374, 379 (2006) (quoting Humphreys v. Commonwealth, 186 Va. 765, 772, 43 S.E.2d 890, 894 (1947)).  This Court may raise the issue *sua sponte*.  Earley v. Landslide, 257 Va. 365, 371, 514 S.E.2d 153, 156 (1999).

"The Court of Appeals of Virginia is a court of limited jurisdiction."  Canova Elec. Contracting, Inc. v. LMI Ins. Co., 22 Va. App. 595, 599, 471 S.E.2d 827, 829 (1996).  We possess subject matter jurisdiction over only those classes of cases specified by statute.  Id.

Our jurisdiction over domestic relations disputes comes from Code § 17.1-405.  In relevant part, that section provides us jurisdiction over:

> 3.  Any final judgment, order, or decree of a circuit court involving:
>
> &ast;    &ast;    &ast;    &ast;    &ast;    &ast;    &ast;
>
> c.  Custody;
>
> d.  Spousal or child support;
>
> e.  The control or disposition of a child;
>
> &ast;    &ast;    &ast;    &ast;    &ast;    &ast;    &ast;

4. Any interlocutory decree or order entered in any of the cases listed in this section (i) granting, dissolving, or denying an injunction or (ii) adjudicating the principles of a cause.

Code § 17.1-405. Thus, aside from eligible interlocutory decrees under subsection (4), the Code permits us to review only "final" orders.

As defined by the Virginia Supreme Court, a final order "'is one which disposes of the whole subject, gives all the relief contemplated, provides with reasonable completeness for giving effect to the sentence, and leaves nothing to be done in the cause save to superintend ministerially the execution of the order.'" James v. James, 263 Va. 474, 481, 562 S.E.2d 133, 137 (2002) (quoting Daniels v. Truck & Equip. Corp., 205 Va. 579, 585, 139 S.E.2d 31, 35 (1964)); see also Seguin v. Northrop Grumman Sys. Corp., 277 Va. 244, 247, 672 S.E.2d 877, 878 (2009); Upper Occoquan Sewage Auth. v. Blake Constr. Co., 275 Va. 41, 60, 655 S.E.2d 10, 21 (2008); Ragan v. Woodcroft Vill. Apartments, 255 Va. 322, 327, 497 S.E.2d 740, 743 (1998). If "further action of the court in the cause is necessary to give completely the relief contemplated by the court, the decree is not final but interlocutory." Brooks v. Roanoke County Sanitation Auth., 201 Va. 934, 936, 114 S.E.2d 758, 760 (1960).

Orders retaining "jurisdiction to reconsider the judgment or to address other matters still pending in the action" lack finality. Super Fresh Food Mkts. of Va. v. Ruffin, 263 Va. 555, 561, 561 S.E.2d 734, 737 (2002). In Prizzia v. Prizzia, 45 Va. App. 280, 283, 610 S.E.2d 326, 328 (2005), the husband filed a complaint seeking a divorce, equitable distribution, and custody of the parties' child. The trial court entered an order declining "to exercise jurisdiction . . . at this time" over divorce and custody because of pending divorce proceedings in a foreign court. Id. at 284, 610 S.E.2d at 328. However, the order also stated the court would consider child support, spousal support, and equitable distribution after the foreign court entered a divorce decree. Id. We held the order was not final since it expressly retained jurisdiction in several areas. Id. at

285-86, 610 S.E.2d at 329. We also held that although the trial court declined to act on divorce and custody "at this time," such language left open the possibility of later action. Id. at 286, 610 S.E.2d at 329. Hence, the order also lacked finality in these areas. Id. Similarly, in Horn v. Horn, 28 Va. App. 688, 692, 508 S.E.2d 347, 349 (1998), the trial court entered an equitable distribution decree classifying property as marital, but deferring judgment on valuation and distribution until after the conclusion of bankruptcy proceedings. This Court held the order was not final since it "specifically retained jurisdiction to consider further valuation and distribution of the marital property." Id. at 692-93, 508 S.E.2d at 350.

The fact that an order is labeled as final is not dispositive on its finality; the order must, in fact, be final. Thus, in Estate of Hackler v. Hackler, 44 Va. App. 51, 61-62, 602 S.E.2d 426, 431 (2004), we held an order marked "Final Order" lacked finality because it requested a final accounting by a conservator and stated the suit would end after the accounting. The accounting constituted more than just ministerial conduct. Id. at 61, 602 S.E.2d at 431. Likewise, in Commonwealth v. Lancaster, 45 Va. App. 723, 731, 613 S.E.2d 828, 832 (2005), this Court held that "[d]espite its title as the 'Final Order,' the order entered in this proceeding" was not final since important issues remained unresolved.

Application of these principles reveals that in spite of its title as a final order, the August 22 order lacked finality. Estate of Hackler, 44 Va. App. at 61-62, 602 S.E.2d at 431. Most prominently, the order did not grant a divorce. Crowder v. Crowder, 125 Va. 80, 83, 99 S.E. 746, 747 (1919) ("It is very clear that the decree was not final, as the divorce prayed for had not been granted."). It also failed to adjudicate equitable distribution. In fact, the order states that if the parties fail to agree on the distribution of property from the marital home, "this issue shall be decided at the parties' equitable distribution hearing or by written agreement." The record reflects the equitable distribution hearing was initially set for April 2009. The order also

- 8 -

anticipated further action on child support, stating support "shall be recalculated in September 2008." To this end, mother was asked to "submit evidence of her daycare costs." The order imputed father with income as of October 1, 2008, the amount depending on where he chose to live, but father could still seek to substitute actual income at a recalculation hearing. Having not granted a divorce and leaving other matters for later consideration, the August 22 order lacked finality. Lockheed Info. Mgmt. Sys. Co. v. Maximus, Inc., 259 Va. 92, 107, 524 S.E.2d 420, 428 (2000) ("An order is not final and appealable if claims against the defendant remain unresolved."). It represented an interlocutory order.

This Court may only hear interlocutory appeals under the jurisdiction provided by Code § 17.1-405(4). As mentioned above, the appealed order must grant, dissolve, or deny an injunction or adjudicate "the principles of a cause." Id.

The Virginia Supreme Court defined the phrase "adjudicating the principles of a cause" in Lewis v. Lewis, 271 Va. 520, 628 S.E.2d 314 (2006). The Court stated:

> "[I]t must mean that the rules or methods by which the rights of the parties are to be finally worked out have been so far determined that it is only necessary to apply these rules or methods to the facts of the case in order to ascertain the relative rights of the parties with regard to the subject matter of the suit."

Id. at 526, 628 S.E.2d at 317 (quoting Lancaster v. Lancaster, 86 Va. 201, 204-05, 9 S.E. 988, 990 (1889)). The Lewis Court continued: "The phrase 'refers to the principles which affect the subject matter of the litigation and the rules by which the rights of the parties to the suit are to be finally determined.'" Id. (quoting Thrasher v. Lustig, 204 Va. 399, 402, 131 S.E.2d 286, 288 (1963)).

An interlocutory order "adjudicating the principles of a cause" "must 'determine the rights of the parties' and 'would of necessity affect the final order in the case.'" Erikson v. Erikson, 19 Va. App. 389, 391, 451 S.E.2d 711, 713 (1994) (quoting Pinkard v. Pinkard, 12

Va. App. 848, 851, 407 S.E.2d 339, 341 (1991)). The order must be one that "adjudicates the underlying cause." City of Richmond-Fire & Emergency v. Brandon, 32 Va. App. 787, 789, 531 S.E.2d 22, 23 (2000). The order must address "the chief object[s] of the suit." Erikson, 19 Va. App. at 391, 451 S.E.2d at 713 (internal quotation marks and citation omitted). Typically, such goals include obtaining a divorce, determining custody of children, deciding whether to grant child or spousal support, and resolving equitable distribution. Wells v. Wells, 29 Va. App. 82, 86, 509 S.E.2d 549, 551 (1999). The simple chance that a decree might affect the final order does not entitle a party to appeal. Polumbo v. Polumbo, 13 Va. App. 306, 307, 411 S.E.2d 229, 229 (1991).

Significant policy interests counsel against frequent interlocutory appeals and, therefore, finding an order adjudicates "the principles of a cause." Even in the antebellum era, Virginia courts recognized the need "to prevent the delay and expense of unnecessary and reiterated appeals" that could result from broad interlocutory appellate jurisdiction.[4] Cocke's Adm'r v. Gilpin, 40 Va. (1 Rob.) 20, 34 (1842). Significant departure from the rule requiring final judgments before appeal could produce "an infinity of appeals and litigation" and "change the nature of the jurisdiction of an appellate Court, which properly should be confined to the correction of final and deliberative judgments." M'Call v. Peachy, 5 Va. (1 Call) 55, 60 (1798). An aggrieved party seeking immediate relief from an erroneous interlocutory order should typically attempt to "have the error corrected in the court below" rather than appeal. Armstrong's Adm'r v. Pitts, 54 Va. (13 Gratt.) 235, 238 (1856); see also Richardson v. Gardner, 128 Va. 676, 685, 105 S.E. 225, 228 (1920).

---

[4] As our Supreme Court later remarked, the appellate process represents an "expensive remedy." Kendrick v. Whitney, 69 Va. (28 Gratt.) 646, 653 (1877).

- 10 -

The reasons for generally requiring final judgments before appeal remain forceful today. As this Court has noted, the general rule prohibiting interlocutory appeal "'preserves the [trial] court's independence and protects parties from the harassment of separate appeals of individual rulings.'"[5] Lancaster, 45 Va. App. at 733, 613 S.E.2d at 832 (quoting Harper v. Bowen, 854 F.2d 678, 680 (4th Cir. 1988)). Similarly, we have stated that "Virginia courts have long favored rehearings because they reduce the time and expense of appeals," which represents a notion "supported by strong public policy considerations."[6] Zamani v. Commonwealth, 26 Va. App. 59, 64 n.1, 492 S.E.2d 854, 857 n.1 (1997); see also Ry. Express Agency, Inc. v. Commonwealth, 196 Va. 1069, 1073, 87 S.E.2d 188, 190 (1955) (noting "the vexation and delay of appeal"). "The unavoidable delays of the law are many, and for this reason all unnecessary delay in the administration of justice should be avoided, for delay has always constituted one of the greatest evils of the law." Richmond Cedar Works v. Harper, 129 Va. 481, 491, 106 S.E. 516, 520 (1921).

Simply stated, interlocutory appeals often result in inefficiency and unnecessary delay and expense. "By their nature, interlocutory appeals are disruptive, time-consuming, and

---

[5] The United States Supreme Court has also spoken of the danger frequent interlocutory appeals could pose for a trial court's independence where factual determinations are important, stating that review could make the appellate body more a supervisor of the case than a review tribunal. Coopers & Lybrand v. Livesay, 437 U.S. 463, 476 (1978). The Court stated such intrusion by an appellate court would destroy a "vital purpose of the final-judgment rule." Id. The Coopers & Lybrand Court further cited Parkinson v. April Industries, Inc., 520 F.2d 650 (2d Cir. 1975), with favor. Id. In Parkinson, the court stated: "An appellate court's solicitude to prevent the unproductive effort which an erroneous order may create ought not to warrant an out-of-time intrusion by the appellate court into the proper sphere of the trial judge. The line between helpful guidance and noxious interference is a narrow one . . . ." 520 F.2d at 654.

[6] The public policy favoring appeal from final judgments over interlocutory review forms part of the general policy supporting an expedient end to litigation. Along this reasoning, our Supreme Court has stated that "[l]itigation is a serious and harassing matter, and the right to know when it is ended is a valuable right." Avery v. County Sch. Bd. of Brunswick County, 192 Va. 329, 333, 64 S.E.2d 767, 770 (1951).

expensive." Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 294 (1st Cir. 2000). They "invite inefficiency, redundancy, and delay." Birmingham Fire Fighters Ass'n 117 v. Jefferson County, 280 F.3d 1289, 1295 (11th Cir. 2002). By contrast, the requirement of a final judgment "is designed to prevent the parties from taking piecemeal appeals," which would lead "to judicial inefficiency and unnecessary delay of the conclusion of the litigation." United States v. Sam Goody, Inc., 675 F.2d 17, 20 (2d Cir. 1982); see also Leinhart v. Dryvit Sys., 255 F.3d 138, 145 (4th Cir. 2001) (noting the "judicial diseconomy of permitting routine interlocutory appeals"); Blair v. Equifax Check Servs., Inc., 181 F.3d 832, 835 (7th Cir. 1999) (stating the fact that an interlocutory appeal "interrupts the progress of a case and prolongs its disposition" represents "a principal reason why interlocutory appeals are so disfavored"). To summarize: "The final decision rule is well known and longstanding. It . . . promotes judicial efficiency, avoiding piecemeal appeals." State Treasurer of the State of Michigan v. Barry, 168 F.3d 8, 16 (11th Cir. 1999).

This does not mean, of course, that parties may not appeal any interlocutory orders to this Court, for the General Assembly has plainly provided that orders "adjudicating the principles of a cause" may be appealed. Code § 17.1-405(4). Such cases present the opposite scenario of the cost/benefit analysis normally weighing against interlocutory review, for in appealable interlocutory orders "unnecessary expenses and litigation would be avoided by permitting appeals." Ryan's Adm'r v. McLeod, 73 Va. (32 Gratt.) 367, 380 (1879).

The analysis in Higginbotham v. Brown, 63 Va. (22 Gratt.) 323 (1872), proves instructive for this case. There the trial court held Brown owned 150 acres of land Higginbotham claimed to possess and ordered a survey to mark the relevant 150 acres. Id. at 328. Obviously, this first order represented an interlocutory order. The trial court planned to enter another order granting Brown a defined piece of property. Id. Yet before the trial court could take further action,

Higginbotham appealed. Id. Our Supreme Court held the appeal came too early. Id. It stated that "[i]t can be better ascertained after the said survey is made and reported to the court, with any facts elicited thereby or evidence connected therewith, whether the said decree is proper or not; and if not, what decree ought to be made." Id. Thus, although the trial court had decided the issue that Brown had a property interest, the Court preferred to have all evidence before it when considering the appeal. Accordingly, the Court dismissed the appeal. Id. at 329.

Similarly, our Supreme Court later remarked on how it would regularly "refuse an appeal from an interlocutory decree until the case is more fully developed on its merits. Such a refusal does not bar a subsequent application when the case has been so developed, and especially after a final decree has been entered." Mathieson Alkali Works v. Va. Banner Coal Corp., 140 Va. 89, 107, 124 S.E. 470, 475 (1924).

Based on this precedent and especially when evaluated in light of the strong policy considerations against frequent interlocutory appeal, we conclude that where a trial court in a divorce suit enters an order resolving only some of the main objects of the suit, such an order normally does not adjudicate "the principles of a cause."[7] To hold otherwise would permit divorce litigants to appeal each order of the trial court adjudicating the divorce, custody, equitable distribution, child support, or spousal support.[8] The resulting inefficiency would compel this Court to repeatedly entertain the same suit and significantly delay the progress of the case at the trial level as the case halted pending the appeal.[9] Normal, standard cases would

---

[7] We merely hold that under circumstances such as those present here an order is not immediately appealable. We do not speculate on other circumstances.

[8] Orders on discrete issues may be final where they constitute the only issues in the litigation.

[9] After this Court obtains jurisdiction because of an appeal, the trial court loses jurisdiction, except to enforce pre-existing orders. Frazer v. Frazer, 23 Va. App. 358, 379-80, 477 S.E.2d 290, 300 (1996).

receive interlocutory review, along with the delay and expense accompanying it.  We do not

believe the General Assembly intended these consequences.  Only rarely does interlocutory

review save time and money.[10]

These problems would particularly manifest themselves in cases arising from Fairfax

County such as this one, for since the trial court in that jurisdiction apparently bifurcates every

divorce case, every case could generate multiple appeals.  The disruption of the trial process and

expense to the parties would prove severe.  This Court would become a body closely scrutinizing

trial court decisions instead of a body reviewing the entire record after mature consideration of

the issues by the trial court.  The volume of our caseload would also exponentially increase,

further delaying cases of such intimate importance to the parties.

---

[10] We do not hold parties may only appeal final orders, for our Supreme Court has clearly held interlocutory orders may adjudicate "the principles of a cause" and thereby be appealable. Butler v. Hayes, 254 Va. 38, 43, 487 S.E.2d 229, 232 (1997); Crump v. Gilliam, 190 Va. 935, 937, 59 S.E.2d 72, 72 (1950).  Indeed, several Virginia domestic relations cases have involved interlocutory orders "adjudicating the principles of a cause."  In Crowder, 125 Va. at 83, 99 S.E. at 747, the Court held an interlocutory order appealable where it in effect resolved "all the questions raised by the complainant's bill."  In Weizenbaum v. Weizenbaum, 12 Va. App. 899, 902, 407 S.E.2d 37, 39 (1991), this Court held an interlocutory decree awarding a partial amount of lump sump alimony was appealable.  However, alimony was the only issue remaining in the case and the Court noted the award exposed the appellant to having "no recourse against execution" of the judgment, thus necessitating an appeal.  Id. at 901-02, 407 S.E.2d at 38-39. The Weizenbaum Court also held a divorce order entered years before the alimony award was appealable.  Id. at 901, 407 S.E.2d at 38.  Yet it should be noted that the obtaining of a divorce is the preeminent aim of a divorce suit and that the only other matter in the case was apparently the alimony issue, which the trial court held under advisement when issuing the divorce decree.  Id. at 901, 407 S.E.2d at 38; see also Pinkard, 12 Va. App. at 852, 407 S.E.2d at 342 (stating that "the chief object" of a divorce suit is "to secure a divorce").  Finally, in Owney v. Owney, 8 Va. App. 255, 258-59, 379 S.E.2d 745, 747 (1989), we held that under the facts there, a "final" award of spousal support in an interlocutory order was appealable.  On the other hand, we also stated the support award arose from another matter properly decided on contractual interpretation grounds and that a property settlement agreement forbade the trial court from granting support. Id. at 260-61, 379 S.E.2d at 748-49.  We believe the holdings of Weizenbaum and Owney that the issues there adjudicated "the principles of a cause," while correct, have limited relevance outside their facts.

Indeed, the facts of this case illustrate the woes that would occur if orders such as the one here could receive immediate appeal. The judge *pro tempore* issued his order on August 22, 2008. The parties now receive a decision approximately twelve months later, with no other progress having occurred in the case. The trial court must still adjudicate the divorce and equitable distribution, after which the parties may return to this Court and wait another twelve months. We think such inefficiencies unwise. Had this appeal not occurred, the trial court could have adjudicated the remaining issues and the parties could have then taken an appeal to this Court, where we could review the entire record and correct any errors warranting reversal.

Along this reasoning, we hold father's first and second assignments of error do not adjudicate "the principles of a cause" and are, therefore, not eligible for interlocutory appeal.[11] Father first argues the Fairfax County Circuit Court judge erred by declaring in a calendar control form that the custody decision contained in the letter opinion of the judge *pro tempore* was final rather than *pendente lite*. Yet the calendar control order's statement that father must appeal did not make final that which plainly lacked finality for purposes of appeal. At most, the order held the trial court would not receive further evidence concerning custody. Moreover, the judge *pro tempore* was not bound to follow the Fairfax County Circuit Court judge's interpretation of the letter opinion when entering the August 22 order. The Code vested him with the same powers as a regular trial judge in the areas he considered, Code § 17.1-110, as did the order appointing him. Nothing in the record suggests the judge *pro tempore* believed the calendar control form bound him. In the absence of contrary evidence, we presume judges know the law and correctly apply it. Wilson v. Commonwealth, 23 Va. App. 318, 326, 477 S.E.2d 7, 10 (1996). Thus, the Fairfax County Circuit Court judge's anticipation of what the August 22

---

[11] As our Supreme Court once held: "Until a final decree, or one adjudicating the principles of the cause, is properly brought before this court, it is without power to exert its appellate jurisdiction." Johnston v. Johnston, 181 Va. 357, 359, 25 S.E.2d 274, 275 (1943).

- 15 -

order would contain did not adjudicate its merits. The merits of the custody decision are challenged in father's second assignment of error. However, that custody decision, even if concluded in the trial court, did not adjudicate "the principles of a cause" where the issues of the divorce, equitable distribution, and child support remained outstanding.

Finally, while father's third assignment of error concerning the judge *pro tempore*'s decision to deny an injunction prohibiting mother from relocating with the children to the Norfolk/Virginia Beach area may appear to fall within our jurisdiction in Code § 17.1-405(4), which permits interlocutory appeals from orders denying injunctions, the relocation issue is, in fact, moot since the judge *pro tempore* presumed mother's relocation was inevitable and that she there then lived, when deciding custody. This was appropriate since mother testified regarding her pending military transfer: "Whether or not I'm awarded custody, I have to move to Norfolk. I've taken an oath and I've accepted the orders." Since the judge *pro tempore* found mother residing in Virginia Beach should receive custody, a separate decision on relocation was unnecessary.[12] Thus, the relocation issue falls within the custody decision, which is not presently appealable.

We remain mindful that trial courts have a strong interest in resolving particular issues within litigation to control their dockets and that the judge *pro tempore*'s designation of his order

---

[12] We distinguish Judd v. Judd, 53 Va. App. 578, 673 S.E.2d 913 (2009), and Petry v. Petry, 41 Va. App. 782, 589 S.E.2d 458 (2003). In Judd, this Court held a trial court may consider whether to permit relocation in the hearing on divorce, equitable distribution, and custody. 53 Va. App. at 585, 673 S.E.2d at 916-17. In Petry, we stated that when a trial court evaluates relocation for the first time in the initial custody order, it need only consider the best interests of the children, which is the test regularly used to determine custody. 41 Va. App. at 790, 589 S.E.2d at 462. In both cases, one of the parties requested court approval for relocation. Judd, 53 Va. App. at 582, 673 S.E.2d at 915; Petry, 41 Va. App. at 788, 589 S.E.2d at 461. Nothing in Judd or Petry suggests the relocating party would have moved regardless of the relocation decision in the trial court, whereas here mother plainly stated her intention to move with or without custody. Given that decision, the judge *pro tempore* could simply decide custody between father in Fairfax and mother in Virginia Beach.

as "final" and the Fairfax County Circuit Court judge's statement that appeal from a final order goes to this Court served those ends. Certainly the law gives trial courts significant latitude in managing their dockets. See Code § 8.01-4 (authorizing trial courts to adopt local rules and docket control methods). Yet that discretion has its limits.

Within time limitations established by statute or jurisprudence, circuit courts may devise procedures to resolve issues within a cause of action, accommodating their dockets, to be heard on various days or times, or by various judges within their circuits. A circuit court may by order decree that no further evidence will be heard concerning such an issue resolved. But a circuit court may not designate the resolution of an issue within a pending cause of action as final. A circuit court may not by such designation expand the appellate jurisdiction of the Court of Appeals beyond that set forth in Code § 17.1-405 and our jurisprudence governing that jurisdiction. To designate that which is not final as final places counsel and/or parties in an untenable position: Do I appeal now, or when the final order in the cause of action is entered?[13] And, further, in appeals of right, such erroneous designation requires this Court to consider, as here, matters prematurely before us.

For the foregoing reasons, we hold we lack subject matter jurisdiction to consider this appeal and, therefore, dismiss it without prejudice.

Dismissed.

---

[13] The issue of whether parties may immediately appeal the custody order entered under the bifurcated divorce trial system employed in Fairfax County has apparently resulted in much speculation. In response to a question at oral argument about this, mother's counsel stated: "I think that's a question that every Fairfax County lawyer would like to know the answer to."