COURT OF APPEALS OF VIRGINIA

Present: Judges Raphael, Lorish and Frucci
Argued at Arlington, Virginia

UNPUBLISHED

HUY LE

MEMORANDUM OPINION* BY
v.      Record No. 0596-24-4      JUDGE STEVEN C. FRUCCI
SEPTEMBER 16, 2025

YEKATERINA LE

FROM THE CIRCUIT COURT OF FREDERICK COUNTY
William W. Eldridge, IV, Judge

Minji Kim (Prosper Law PLLC, on briefs), for appellant.

Demian J. McGarry (Curran Moher Weis, P.C., on brief), for
appellee.


Huy Le ("husband") appeals the circuit court's final order of divorce. He contends that

the circuit court "erred in assuming subject matter jurisdiction without proper evidence or

investigation when [Yekaterina Le's ("wife")] bigamy is suspected." He also claims that the

circuit court erred by awarding wife primary custody of their children and failing to order her to

provide health insurance for the children. Finally, he asserts that the circuit court erred by

classifying and treating certain financial accounts as marital property and by failing to credit him

for his post-separation mortgage payments. We affirm in part and reverse in part the circuit

court's judgment and remand the case for entry of a final order consistent with this opinion.

BACKGROUND

"When reviewing a trial court's decision on appeal, we view the evidence in the light most

favorable to the prevailing party," in this case wife, "granting [her] the benefit of any reasonable

---

* This opinion is not designated for publication. See Code § 17.1-413(A).

inferences." *Starr v. Starr*, 70 Va. App. 486, 488 (2019) (quoting *Congdon v. Congdon*, 40 Va. App. 255, 258 (2003)). The parties married in July 2014 and had two children together—E.L. and V.L. (collectively referred to as "the children").[1] Wife is also the mother of M.P., who is her child from a previous relationship. The parties separated in July 2022 and cross-filed for divorce, custody, child support, and equitable distribution. Wife's original complaint alleged that M.P. was her child "from a previous marriage," but she amended her complaint to identify M.P. as her child "from a previous RELATIONSHIP" because she had "never married prior to marrying [husband]." The attorney who filed wife's amended complaint withdrew due to "[p]rofessional and ethical considerations."

The circuit court temporarily awarded wife primary physical custody of the children and ordered her to "maintain children's health insurance plan as long as it is provided by her employer." Six months before trial, husband moved to enjoin wife from relocating to Fairfax, Virginia. He argued that he "provide[d] all transportation for visitation and ha[d] a very limited schedule that would be largely subsumed by travel time." The circuit court denied husband's motion and wife moved to Fairfax.

The parties' pretrial affidavits classified items of their estate as separate or marital property. The pretrial affidavits identified the two 529 plan investment accounts benefitting E.L. and V.L (the "children's 529 accounts") as marital property. The parties subsequently filed pleadings disputing the classification of the children's 529 accounts. At the start of trial, the parties introduced a written joint stipulation further classifying the items of their estate. The parties crossed out part of the joint stipulation listing the children's 529 accounts as marital property but did not list the accounts as

---

[1] We use initials, rather than names, to protect the privacy of the minors mentioned in this opinion.

- 2 -

separate property. The parties also stipulated to the admission of hundreds of pages of financial records and other documents into evidence.

Wife's mother, Natalya Polichshuk, testified that the parties' marital home, where husband resided, was "a construction site" and had "no walls in some areas," such as the bathroom area. She claimed that husband left tools around the home and that mice, rats, and snakes had entered the home "on several occasions." She also testified that husband was "angry and yell[ed] . . . [p]ractically every day," including in the presence of the children.

Husband asked Polichshuk how long wife had been married to M.P.'s biological father. She responded that "[t]here was no marriage." Husband then explained to the circuit court that he had "wanted to make sure that [there was] a valid marriage to divorce" and acknowledged that the parties could "move forward" following Polichshuk's testimony.

Wife testified that she and husband started experiencing "marital difficulties" in 2019 when husband began to "excessively punish [M.P.]." She explained that husband punished M.P. by making M.P. stand in a corner for hours, preventing M.P. from eating or drinking, and forcing M.P. to sleep on the floor or stay outside during winter. Wife claimed that she sometimes found M.P. outside "in [a] dog cage," haystack, or shed. She also claimed that husband punished her each time he punished M.P. by taking her phone, cutting her credit cards, or taking her wedding ring.

According to wife, the children did not have a bedroom in the marital home and she, husband, and the children slept in the living room. She added that husband "didn't do anything in the house," spent "minimum time" with the children, and had the children sleep on the floor when they visited him. Wife acknowledged that she had previously struck M.P. "[w]ithout any hurt or harm," spanked M.P. with a belt, and once twisted E.L.'s ear "without any harm."

Wife explained that she did not carry health insurance for the children because she lost her insurance when she changed jobs, and her new job did not offer insurance. However, she claimed she would enroll in health insurance when it became available in January 2024.

Husband testified that he had a "loving relationship" with the children and spent most of his time with them when they visited. He added that he had partially renovated the marital home so that the children now had separate bedrooms, furniture, and hot water. He also claimed that he helped take care of the children and "around the house" during the marriage. Husband quit his job after the parties separated and was unemployed at the time of trial.

Husband expressed concern with having M.P. around the children. He claimed that M.P. had verbally abused and inappropriately touched E.L. but also admitted that he had not witnessed such behavior. Husband contended that he used funds from a Fidelity Rollover IRA to pay for the mortgage on the marital home for "[p]robably three months" after the separation.

After the close of all the evidence, wife asked the circuit court to award her primary custody of the children and child support. She argued that the child support award should account for the $373 monthly fee she expected to pay for the children's health and dental insurance beginning in January 2024. Wife did not "believe that [she] ha[d] an argument that she should get any portion of" the children's 529 accounts. She also asked the circuit court not to credit husband for his post-separation mortgage payments because the record showed that he paid the mortgage using funds from the parties' joint Citibank account.

Husband asked for primary or equal physical custody of the children. He claimed that he had addressed the concerns about the marital home and emphasized his ability to spend time with the children because he was "not working." Husband also asked for a credit for his post-separation mortgage payments. His counsel acknowledged that husband had "commingled . . . funds all over the place," but husband insisted that the circuit court could trace the funds he used to pay the

mortgage to his Fidelity Rollover IRA "if [it] dug around and spent five or six hours of looking at what went between the different accounts." He argued that "the deposits into [the parties' joint Citibank] account came from someplace."

The circuit court found that M.P. was wife's child from a previous relationship and entered a final order of divorce in her favor. The circuit court also found that the parties had "agreed upon the classification of their acquired property," but it did not expressly classify the children's 529 accounts as either marital or separate property. The circuit court acknowledged at a hearing, however, that the parties had stipulated that the children's 529 accounts were separate property and that it "found that they were separate property."[2] The circuit court nevertheless required husband to maintain the children's 529 accounts and ordered that the funds in those accounts would be divided equally between the parties after the children either completed their post-secondary education or turned 23 years old. The circuit court declined to credit husband for his post-separation mortgage payments after finding that he had presented "no compelling evidence" tracing the payments to his separate accounts.

The circuit court considered the factors under Code § 20-124.3 before awarding wife primary custody of the children. The circuit court found that wife was the children's primary caretaker and met their physical, emotional, and intellectual needs. By contrast, the circuit court doubted husband's ability to accurately assess and meet the children's needs. The circuit court noted that husband infrequently took the children to "activities," but also found that he moved the children into the marital home "before it was livable" and had a "disturbing pattern of discipline." The circuit court ordered the parties to equally divide their transportation responsibilities.

---

[2] This hearing occurred after the circuit court entered its findings of fact and conclusions of law and before it entered its final order.

Finally, the circuit court ordered husband to pay wife monthly child support based, in part, on its finding that she paid $373 monthly for health insurance for the children. The circuit court did not, however, order wife to secure or maintain the children's health insurance policy. However, the circuit court ordered the parties to pay unreimbursed medical expenses in proportion to their gross incomes. Husband appeals.

ANALYSIS

I. The circuit court had subject matter jurisdiction over this matter.

"[T]he lack of subject matter jurisdiction can be raised at any time in the proceedings." *Watson v. Commonwealth*, 297 Va. 347, 352 (2019) (quoting *Morrison v. Bestler*, 239 Va. 166, 170 (1990)). "The parties cannot waive the absence of subject matter jurisdiction or confer it upon a court by their consent." *Cilwa v. Commonwealth*, 298 Va. 259, 266 (2019). "Whether the record establishes subject matter jurisdiction in a particular case is a question of law reviewed de novo on appeal." *Ruderman v. Pritchard*, 76 Va. App. 295, 302 (2022).

Husband contends that the circuit court erred by "assuming subject matter jurisdiction without proper evidence or investigation" of wife's "suspected" bigamy. He emphasizes that wife's original complaint for divorce alleged that M.P. was her child from a "previous marriage" and that the attorney who filed her amended complaint withdrew due to "[p]rofessional and ethical considerations." According to husband, these pleadings create an inference that wife was married previously. *If* wife was previously married, husband reasons that the circuit court's final order *may* be void *if* she failed to obtain a divorce before marrying him.

However, our Supreme Court has explained:

> When an amended motion for judgment, or amended count thereof, is filed and a comparison of the original and amended pleading shows that the amended motion for judgment, or amended count, was intended as a substitute for the original, the case stands as though the original had never been filed, so far as it relates to the statement of facts.

*Breeding by Breeding v. Hensley*, 258 Va. 207, 212 (1999). In this case, wife's amended complaint substituted her original complaint. Therefore, the original complaint husband primarily relies on was, in effect, never filed. *See id.* Regardless, Polichshuk testified that wife had not been married previously, and husband conceded that the parties could "move forward" based on her testimony. As such, there is no evidence that shows that the wife was either married previously or had failed to obtain a divorce from a previous marriage.[3]

"Subject matter jurisdiction defines a court's 'power to adjudicate a case.'" *Hannah v. Commonwealth*, 303 Va. 106, 123 (2024) (quoting *Pure Presbyterian Church of Wash. v. Grace of God Presbyterian Church*, 296 Va. 42, 49 (2018)). "This jurisdiction 'may only be acquired by virtue of the Constitution or of some statute.'" *Id.* (quoting *Pure Presbyterian*, 296 Va. at 49). Code §§ 20-96, -107.2, and -107.3 grant the circuit court subject matter jurisdiction to enter a decree of divorce and authorize it to determine matters of equitable distribution and child custody, visitation, and support. Accordingly, the circuit court had subject matter jurisdiction to enter its final order in this case.

II. The circuit court reasonably awarded wife primary custody of the children and divided the parties' transportation responsibilities.

"Custody and visitation matters are reviewed for abuse of discretion." *Brandon v. Coffey*, 77 Va. App. 628, 635 (2023). "The trial court's decision on factual issues is entitled to great weight and will not be disturbed unless plainly wrong or without evidence to support it." *Id.* (quoting *Rainey v. Rainey*, 74 Va. App. 359, 377 (2022)). "So 'long as the evidence in the

---

[3] Notably, "[w]hen a party asserts that a prior marriage renders a later one void as bigamous, 'the second marriage is presumed to be valid.'" *Rahnema v. Rahnema*, 47 Va. App. 645, 664 (2006) (quoting *Parker v. Am. Lumber Corp.*, 190 Va. 181, 185 (1949)). Though the presumption can be rebutted, "the rebuttal proof must demonstrate not only a prior marriage, but also that the earlier marriage did not end before the later one began." *Id.* In this case, there was no evidence presented that wife was previously married or that a prior marriage of wife's had not ended before a later one.

record supports' the circuit court's determination and it 'has not abused its discretion, its ruling must be affirmed on appeal.'" *Id.* (quoting *Rainey*, 74 Va. App. at 377).

Husband asserts that the circuit court erred by awarding wife primary physical custody of the children because it ignored M.P.'s alleged "behavioral problems," "selectively rel[ied] on evidence favorable to [wife]," and failed to acknowledge his testimony indicating that he was attentive to the children's needs. Husband emphasizes that he took E.L. to soccer practice and his own testimony alleging that M.P. had verbally abused and inappropriately touched E.L. He further claims that wife "admitted to various forms of corporal punishment."

"In child custody cases, Code § 20-124.2 provides that 'the court shall give primary consideration to the best interests of the child.'" *Rainey*, 74 Va. App. at 379. "In turn, Code § 20-124.3 lists ten factors that the court 'shall consider' in determining a child's best interests." *Id.* Here, the circuit court expressly considered each of the statutory factors before awarding wife primary custody of the children. It found, among other things, that wife was able to assess and meet the children's physical, emotional, and intellectual needs. By contrast, the circuit court was dubious about husband's ability to do so and his "disturbing pattern of discipline." Similarly, the circuit court recognized that husband took the children to "activities," but it found that he did so infrequently. In sum, the circuit court properly considered the statutory factors based on the evidence presented and found that awarding wife primary custody was in the children's best interest.

Husband asserts that the circuit court nevertheless erred by equally dividing the responsibility for transporting the children between the parties. He argues that wife's relocation to Fairfax was not in the children's best interest and that "it would have been more equitable for [wife] to be responsible for the transportation." But "when a trial court evaluates relocation for the first time in the initial custody order, it need only consider the best interests of the children, which is the

- 8 -

test regularly used to determine custody." *Brandon*, 77 Va. App. at 637 (quoting *de Haan v. de Haan*, 54 Va. App. 428, 446 n.12 (2009)). As stated above, the circuit court properly considered the statutory factors and found that ordering the parties to share the responsibility of transporting the children to be in their best interest. For all these reasons, we will not disturb the circuit court's custody and visitation award, as it was not plainly wrong or without evidence to support it. *Id.* at 635.

  III. The circuit court erred by failing to order wife to provide health insurance for the children.

Husband contends for the first time on appeal that the circuit court erred by failing to order wife to provide health insurance for the children. Though he did not preserve his argument below, he asks that this Court consider it under the ends of justice exception to Rule 5A:18 based on "the facts and circumstances of the case."

"The ends of justice exception 'allows an appellate court to consider a matter not preserved by objection in the trial court' to prevent a grave injustice 'or the denial of essential rights.'" *Amazon Logistics, Inc. v. Va. Emp. Comm'n*, ___ Va. ___, ___ (Mar. 6, 2025) (quoting *Charles v. Commonwealth*, 270 Va. 14, 17 (2005)). "Invoking the ends of justice exception to the contemporaneous objection rule requires a determination not only that there was error in the judgment of the trial court but also that application of the exception is necessary to avoid a grave injustice." *Charles*, 270 Va. at 20. "The burden of establishing a manifest injustice is a heavy one, and it rests with the appellant." *Conley v. Commonwealth*, 74 Va. App. 658, 683 (2022) (quoting *Holt v. Commonwealth*, 66 Va. App. 199, 210 (2016) (en banc)). "In order to avail oneself of the exception, [the appellant] must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred." *Id.* (alteration in original) (quoting *Holt*, 66 Va. App. at 210).

To assess whether a grave injustice occurred in this case, we begin with the statutory requirements governing child support and health insurance. Code § 20-108.2(E) provides that "[t]he costs for health care coverage as defined in § 63.2-1900 . . . for . . . children who are the subject of [a] child support order . . . shall be added to the basic child support obligation." "[H]ealth care coverage" is "any plan providing hospital, medical or surgical care coverage for dependent children provided such coverage *is available and can be obtained by a parent . . . at a reasonable cost*." Code § 63.2-1900 (emphasis added). In other words, a child support award must include the cost of health care coverage if such coverage is available and can be obtained at a reasonable cost.

All orders directing the payment of child support must include "[a]n order for health care coverage . . . for dependent children . . . if available at reasonable cost as defined in § 63.2-1900, or a written statement that health care coverage is not available at a reasonable cost as defined in such section." Code § 20-60.3(8)(a). A "reasonable cost" for health care coverage as it pertains to dependent children is:

> an amount not to exceed *five percent* of the gross income of the parent responsible for providing health care coverage, and accessible through employers, unions or other groups, or Department-sponsored health care coverage, without regard to service delivery mechanism; unless the court deems otherwise in the best interests of the child, including where the only health care coverage available exceeds five percent, or by agreement of the parties.

Code § 63.2-1900 (emphasis added).

The parties stipulated, and the circuit court found, that wife's gross monthly income is $5,682.50. The circuit court further found that wife paid $373 monthly for health insurance for the children, which is approximately 6.5% of her monthly gross income. The parties did not introduce evidence of other health insurance available to the children. Thus, the record supports

- 10 -

that health insurance was not available to the children at a "reasonable cost," unless the circuit court deemed otherwise. Code § 63.2-1900.

Although the circuit court did not expressly find that the children's health insurance policy was available at a reasonable cost to wife, it added the cost of that policy to its child support award.[4] Thus, the circuit court's child support award implicitly showed that it found that health insurance was available for the children at a reasonable cost.[5] Code §§ 20-108.2(E), 63.2-1900. Consequently, Code § 20-60.3(8)(a) required the circuit court to order wife to provide health care coverage for the children. Thus, the circuit court erred by failing to comply with Code § 20-60.3(8)(a). *See Baez v. Commonwealth*, 79 Va. App. 90, 106 (2023) (explaining that a circuit court abuses its discretion by making an error of law).

The circuit court's error constitutes a miscarriage of justice. *See generally Herring v. Herring*, 33 Va. App. 281, 288-89 (2000) (applying the ends of justice exception because the child support order "does not expressly determine the presumptive amount of support due or fully explain the basis for deviating from that amount" and so "does not provide an adequate basis for future modifications of support"). By failing to order wife to provide health insurance to the children, the circuit court's final order allows her to discontinue the children's health insurance policy to their detriment and an improper windfall to herself. More importantly, the order in its present form, although providing for the cost of health care, does not mandate its existence nor contain incentives to keep health care coverage for the children, allowing the parties to drop coverage for the children without any notice and without any repercussions.

---

[4] The circuit court also did not include a written statement that health care coverage is not available at a reasonable cost, which Code § 20-60.3(8)(a) would require.

[5] At oral argument, wife's counsel also acknowledged that the health insurance cost was reasonable.

Accordingly, we will remand the case to the circuit court directing it to comply with Code § 20-60.3(8)(a).

IV. The circuit court reasonably refused to credit husband for any post-separation mortgage payments.

"[M]aking an equitable distribution award is often a difficult task[;] 'we rely heavily on the discretion of the trial judge in weighing the many considerations and circumstances that are presented in each case.'" *Sobol v. Sobol*, 74 Va. App. 252, 272 (2022) (quoting *Howell v. Howell*, 31 Va. App. 332, 350 (2000)). Thus, "a circuit court's 'equitable distribution award will not be overturned unless the [appellate court] finds an abuse of discretion, misapplication or wrongful application of the equitable distribution statute, or lack of evidence to support the award.'" *Id.* (alteration in original) (quoting *Dixon v. Dixon*, 71 Va. App. 709, 717-18 (2020)). "In challenging the court's decision on appeal, the party seeking reversal bears the burden to demonstrate error on the part of the trial court." *Id.* at 272-73 (quoting *Barker v. Barker*, 27 Va. App. 519, 535 (1998)).

Husband contends that the circuit court should have credited him with "up to $16,443" for his post-separation mortgage payments. He acknowledges that he paid the mortgage from the parties' joint Citibank account but insists that the payments were derived from funds in his separate Citibank account.

The related bank statements do not show that husband used separate funds to pay the parties' mortgage. Instead, they show that the parties received deposits in their joint Citibank account in varying amounts and from many sources. Husband's counsel acknowledged at trial that husband had "commingled . . . funds all over the place." Thus, the circuit court was not plainly wrong in finding that he failed to prove that he had paid the mortgage with separate funds. Therefore, the circuit court did not abuse its discretion by refusing to credit him for his payments. *Sobol*, 74 Va. App. at 272. *See Rahbaran v. Rahbaran*, 26 Va. App. 195, 208-09 (1997).

- 12 -

V. The circuit court erred by classifying children's 529 accounts as marital property.

"[T]he trial court's classification of property is a finding of fact," which "will not be reversed on appeal unless it is plainly wrong or without evidence to support it." *Ranney v. Ranney*, 45 Va. App. 17, 31-32 (2005). When the parties stipulate to "a particular disposition of their property, the court may not decree inconsistent relief in equitable distribution pursuant to Code § 20-107.3." *Campbell v. Campbell*, 32 Va. App. 351, 356 (2000). Except under circumstances that are not present here, a circuit court "shall have no authority to order the division or transfer of separate property . . . which is not jointly owned or owed." Code § 20-107.3(C).

Husband argues that the circuit court erred by classifying the children's 529 accounts as marital property and ordering the parties to eventually divide the funds remaining in those accounts. He points out that the parties stipulated that these 529 accounts were his separate property. Wife concedes that the parties stipulated that the 529 accounts at issue are husband's separate property and that the circuit court erred as he claims.

The parties stipulated that the children's 529 accounts were husband's separate property, as indicated by the fact that they removed those accounts from their joint stipulation. The record confirms that the circuit court similarly interpreted the written joint stipulation and found that these 529 accounts were husband's separate property. Moreover, wife conceded at trial that she had no argument "that she should get any portion" of these 529 accounts.

The circuit court did not expressly classify these 529 accounts as marital or separate property. Instead, the circuit court ruled: (a) "Husband shall continue to own the Fidelity 529 Plans opened for the benefit of" E.L. and V.L.; (b) these "accounts shall only be used for the children's post-secondary educational expenses"; and (c) if "any funds remain in these accounts after both children complete their post-secondary education or turn 23, they shall be evenly

divided between the parties." By ordering equal division after post-secondary education or age 23, the circuit court treated the children's 529 accounts as marital property. *Id.* Therefore, the circuit court erred by disregarding the parties' stipulation, and we remand the case to the circuit court to classify the children's 529 accounts as husband's separate property without condition and to reconsider its equitable distribution award accordingly. *Campbell*, 32 Va. App. at 356.

Furthermore, "where an equitable distribution award is reversed on appeal and 'the provisions with regard to the marital property are to be considered on remand, the court must necessarily re-examine spousal support in the light of whatever new or different considerations flow from the additional proceedings.'" *Robinson v. Robinson*, 46 Va. App. 652, 671 (2005) (quoting *McGinnis v. McGinnis*, 1 Va. App. 272, 277 (1985)). "Accordingly, because we reverse [this portion of the] equitable distribution award and remand for reconsideration, we further direct the [circuit] court, on remand, to reconsider the issue of spousal support." *Id.*; *see also* Code § 20-107.1 (providing that, in awarding spousal support, the circuit court "shall" consider "[t]he provisions made with regard to the marital property under § 20-107.3").

VI. The Court denies the parties' requests for appellate attorney fees and costs.

Both parties ask the Court to award them appellate attorney fees and costs. "This Court may award attorney fees incurred on appeal 'based on its consideration of factors including whether the requesting party prevailed, whether the appeal was frivolous, whether either party generated unnecessary expense or delay . . . as well as "all the equities of the case."'" *Yazdani v. Sazegar*, 76 Va. App. 261, 277 (2022) (quoting *Friedman v. Smith*, 68 Va. App. 529, 546 (2018)). "[I]n exercising our discretion to determine whether to award appellate attorney's fees, we do not believe that the equities of this case justify such an award to either party." *Stark v. Dinarany*, 73 Va. App. 733, 757 (2021).

CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed in part and reversed in part. We further remand the case to the circuit court to enter a final order consistent with this opinion.

*Affirmed in part, reversed in part, and remanded.*