## Richmond

R. I. Brooks, Et Al. v. Roanoke County Sanitation Authority.

June 13, 1960.

Record No. 5090.

Present, All the Justices.

The opinion states the case.

*Lewis S. Minter* (*Woodrum & Gregory*, on brief), for the appellants.

*Furman Whitescarver*, for the appellee.

BUCHANAN, J., delivered the opinion of the court.

■ This suit was brought in chancery by Roanoke County Sanitation Authority against R. I. Brooks and Brooks and Patton, Incorporated, to determine the ownership of certain sewer lines constructed by the defendants and to have them conveyed to the Authority. By decree entered April 24, 1959, the court below adjudicated the ownership of the lines and the management thereof to be in the Authority, and directed the defendants to execute a deed to the Authority therefor, for which the defendants were to be reimbursed in the manner set forth in the decree. The decree provided that if the defendants did not execute the required deed on or before April 30, 1959, a special commissioner would be appointed to execute it in their behalf. We granted the defendants, now the appellants, an appeal from this decree.

R. I. Brooks is the president of Brooks and Patton, Inc., and he and his wife own all the stock of the corporation. He was the *alter ego* of the corporation in the matters involved in this case and for the purposes of this opinion he and the corporation will be treated as one. Because of that relation the trial court properly refused to dismiss Brooks as a party defendant.

The appellee, herein called the Authority, has moved to dismiss the appeal because the petition therefor, together with a transcript of the record, was not presented within four months from the date of the decree, Rule 5:4, Code § 8-489.

The limitation of four months applies to final decrees by the terms of § 8-489. If the decree is not final but adjudicates the principles of the cause, an appeal from it may be taken at any time until a final decree is entered and the time for appeal has elapsed. Code § 8-462 (2) (c); *Southwest Virginia Hospitals* v. *Lipps,* 193 Va. 191, 193, 68 S. E. 2d 82, 83. A decree is final only when it disposes of the whole subject, gives all the relief that is contemplated and leaves nothing to be done by the court in the cause except its ministerial execution. *Feldman* v. *Rucker,* 201 Va. 11, 17, 109 S. E. 2d 379, 384; *Southwest Virginia Hospitals* v. *Lipps, supra; Richardson* v. *Gardner,* 128 Va. 676, 682, 105 S. E. 225, 227. Where further action of the court in the cause is necessary to give completely the relief contemplated by the court, the decree is not final but interlocutory. *Mann* v. *Clowser,* 190 Va. 887, 896, 59 S. E. 2d 78, 82; *Cocke* v. *Gilpin,* 1 Rob. (40 Va.) 20; 11 Mich. Jur., Judgments and Decrees, § 7, p. 33. It is not always easy to determine on which side of the line a case falls.

While the decree appealed from adjudicated the ownership of the sewer lines to be vested in the Authority, it further adjudicated that Brooks and Patton, Inc., was entitled to reimbursement for its proved expenditures out of all inspection and connection charges on the lines described in the decree for a period of ten years, unless sooner reimbursed, but subject to credits as therein stated. The decree did not, however, transfer the title to the Authority, but directed the defendants to execute a deed in conformity with the terms of the decree, in default of which the court would appoint a special commissioner to execute such deed. Further action in the cause, therefore, not simply of a ministerial nature, was necessary and was contemplated to accomplish what the court adjudicated should be done. We hold that the decree was interlocutory and that the petition for appeal was in time. The motion to dismiss is accordingly overruled.

The evidence in the case consisted of a number of documents filed as exhibits and the testimony of witnesses heard *ore tenus* by the court, except the deposition of one witness to the effect that the State Highway Department on January 4, 1956, issued a permit to Brooks' contractor to install a sewer line 1400 feet long along Routes 460 and 117 in Roanoke county.

The first contention of the appellants is that the Authority is not exercising valid jurisdiction over "Project Six—Peters Creek," in which the sewer lines in question are located, as contemplated by the

Virginia Water and Sewer Authorities Act, Chapter 22.1 of Title 15, § 15-764.1 through § 15-764.32 of the Code. Amendments were made to some of these sections by Acts 1958, Chapters 400 and 402, but in respects not here material. We sustained the constitutionality of the Act in *Farquhar* v. *Board of Supervisors*, 196 Va. 54, 82 S. E. 2d 577.

The Authority was duly created by resolution of the Board of Supervisors of Roanoke county dated April 18, 1955, publication of notice and hearing, followed by issuance of a charter by the State Corporation Commission, all in compliance with §§ 15-764.3 through 15-764.8. It was thereupon "conclusively deemed to have been lawfully and properly created and established and authorized to exercise its powers under this chapter." § 15-764.8.

The purposes for which the Authority was created, as stated in its charter, included the principal purpose "to undertake the following sanitary sewage projects," set forth in detail in the report of the engineers, on file as described. Then were set forth and described "Project One—North 11" and four others, followed by "Project Six—Peters Creek," which is described, and then it is stated: "The estimated cost to the authority for the construction of said project is None. The construction costs for this area are to be paid for by the subdividers and the property owners."

Appellants' argument is that "project" as used in the Authority's charter should be given the same meaning as given to that word in § 15-724; *i.e.*, involving an outlay of capital. That section is in a different chapter of the Code, dealing with different subjects. Appellants concede that it is not controlling. We hold that it is not applicable. To support their argument appellants also rely on § 15-764.22, authorizing an authority to fix rates for services furnished by a system on account of which revenue bonds have been issued, and they say that the Authority is limited to undertakings similar to "Project One—North 11" in which there was an estimated capital cost of $410,000, on account of which the Authority had issued $600,000 of bonds; and they charge that the Board of Supervisors in its resolution designated other areas for the sole purpose of obtaining revenue to help pay for the bonds issued for Project One.

There is no evidence to support the charge and the statutes do not bear the construction asserted by the appellants.

On the contrary, the Authority is "an instrumentality exercising public and essential governmental functions to provide for the public

health and welfare," and is empowered to "acquire . . . improve, extend, operate and maintain any . . . sewer system . . . and to acquire by gift, purchase or . . . eminent domain . . . rights in land . . . in connection therewith; and . . . to fix, charge and collect rates . . . for the use of or for the services furnished by any system operated by the authority." These may be collected from "any person contracting for the same, or from the owner . . . who uses or occupies any real estate which is served by any such system;" . . . and "to make and enter into all contracts or agreements, as the authority may determine, which are necessary or incidental to the performance of its duties and to the execution of the powers granted by this chapter, . . ." § 15-764.12. "This chapter . . . shall be liberally construed to effect the purposes hereof." § 15-764.32.

There is no merit in the appellants' contention that the Authority was not exercising a valid jurisdiction over Project Six—Peters Creek area.

The next contention of the appellants is that there was no contract between the appellants and the Authority. The court found that the evidence, heard *ore tenus* as stated, established the contract as claimed by the Authority. That finding settles the conflicts in the testimony and is conclusive unless plainly wrong or without evidence to support it. Code § 8-491; *Packard Norfolk v. Miller,* 198 Va. 557, 558, 95 S. E. 2d 207, 208. In that light the record shows as follows:

Under a contract between the City of Roanoke and the County of Roanoke, dated September 27, 1954, and amended May 2, 1955, the county acquired the right to transport sewage from certain areas of the county, including the Peters Creek area, through the sewer lines of the county into the sewer lines of the city for treatment and disposal in the city's treatment plant. The county assigned this contract to the Authority on October 17, 1955. The appellants owned land in the Peters Creek area which they desired to subdivide and sell. Among others they sold a parcel to Esso Standard Oil Company by contract dated April 18, 1955, in which they agreed to make water and sewer services available to the purchaser. About the time of the sale Brooks came to see the County Executive Officer about getting a sewer line or lines to this tract. He was told that the county was not in a position to build any sewer lines; that it would have to be a project of his own. Brooks was sent by the Executive Officer to James A. Beavers, the Executive Director and Secretary-Treasurer of the Authority, with the request that the latter give

Brooks as much information as possible about the policies of the Authority and how Brooks might secure sewer service for his property. Brooks did not have and could not get permission to connect any sewer line to the city system and was without other means of disposing of sewage from his land. Brooks showed Beavers his plans, the matter was presented to the Authority at a meeting on January 5, 1956, and it was recorded in the minutes of the meeting that Brooks would be reimbursed up to his initial capital outlay for the interceptor line, as stated in the standard operating procedure of record in the minutes of September 29, 1955, and October 24, 1955.

On the same day, January 5, 1956, the Authority wrote a letter to Brooks, which was duly received, stating that the Authority agreed to the installation of the interceptor line at the expense of Brooks, in accordance with the plans and specifications "set out on the Malcolm map prepared for you under date of November, 1955," to run eastwardly on Highway 460, thence down Route 117 "to the interceptor line now under construction along Peter's Creek." The letter further stated:

"You will understand that the Authority has no funds to assist your company and that title to this interceptor line, together with any collector lines that you might install, would have to be vested in the Authority." It further stated:

"As to reimbursement, the policy heretofore adopted by the Authority, and spread on its minute books, would apply. I am enclosing you herewith a copy thereof. . . . as to connections made on the line constructed by you, but before it reaches the westerly terminus, all connection and inspection charges received by the Authority for a period of ten (10) years from date of construction will be remitted to your Company by way of reimbursement."

A copy from the minutes of the Authority of September 29 and October 24, 1955, was enclosed. It included this paragraph:

"Upon completion of construction and acceptance by the Authority, and upon proof of payment of all obligations in connection with the construction, the Authority will take title to the line, or lines, and will take over the control of the work completed and operate and maintain such system under rules established by the Authority."

Prior to the receipt of this letter Books had asked for and had received information as to the policy of the Authority with respect to the installation of his sewer lines, and on September 28, 1955,

had accepted the offer of a contractor to build the lines for $6,217.20, his acceptance letter stating: "Of course you understand this work must be done according to city and county specifications." Brooks also paid $685.76 on the cost of constructing the line to connect with the Roanoke city line, and these two items made the $6,902.96 allowed by the decree as reimbursement. The work was begun in April, 1956. The line as built was laid in part through an easement owned by the Authority, and connected with the Norwood line, also owned by the Authority, and through which sewage from the appellants' property was conveyed to the city treatment plant, for which service the Authority pays the city according to the terms of its contract. Four business establishments and nine apartment units on the Brooks land are served in this manner.

Brooks testified that he charged those who were allowed to connect with the sewer lines the same rates as established and furnished to him by the Authority because Beavers informed him that he would have to comply with those charges.

Brooks further testified that it was his understanding of the transaction that he would be responsible for the maintenance of the line until such time as he got his construction cost back, and then he would deed the line over to the Authority, free and without cost. He was asked, "And then you did understand that the title was to go to the Authority at some time?" He answered, "Yes, at sometime." "Q. And the controversy between you and the Authority is as to when the title was to go to it; is that right?" "A. Presumably, yes."

The evidence was ample to sustain the finding of the trial court that there was a contract by which the appellants agreed to convey the sewer lines to the Authority on the terms set forth in the letter of January 5, 1956, from the Authority to the appellants.

The appellants say next that the contract is not enforceable because (1) it is *ultra vires*, and (2) it is within the statute of frauds.

That it is not *ultra vires* is sufficiently shown by the statutes quoted from above. Neither the appellants nor the appellee argued the second ground before us, or before the trial court, as far as the record shows. Assuming, but not deciding, that the statute would otherwise apply to this transaction, *Cf. McMullin's Adm'r v. Sanders*, 79 Va. 356, yet the existence of the contract is admitted by the appellants, its terms are clearly established by the letter of the Authority, and it has been so far performed that under established

principles it should be enforced in equity. *Couch* v. *Cox,* 165 Va. 55, 181 S. E. 433; 8 Mich. Jur., Frauds, Statute of, § 34, p. 798.

The sewer line constructed by the appellants cannot be operated as a public utility under the charter of the corporation, and it could not be used by the appellants because they had no permission and could obtain no permission to connect it with the city line. On the faith of the contract the line was laid through an easement acquired by the Authority for that purpose; it connects with a line operated by the Authority and its sewage is thus conveyed into the city line by virtue of the contract between the Authority and the city, and the Authority is required to pay and does pay for that privilege under its contract. To refuse enforcement of the contract would result either in requiring the Authority to continue its service without compensation and without the right of inspection and maintenance, or in allowing it to discontinue its service and thereby create a serious problem of sanitation and health.

Finally, the appellants contend that the court erred in allowing the Authority a credit of $2,000 against the reimbursement cost of $6,902.96. This credit was for a connection to the sewer line by A. & P. Supermarket, and was one of several connection charges allowed by the decree as having been collected by the appellants. The only evidence in the record about it was from Brooks, who testified that this $2,000 was a connection fee charged by him to the A. & P. based on the number of its employees and on the Authority's rates; that this fee had not been collected but he was currently making efforts to collect it. It is stated in appellee's brief that appellants had brought suit in the court below for this sum, to which the defendant had interposed a claim that the connection fee had been included by the appellants in the price of the land. In ruling on the question the court below said that since the appellants had thus undertaken to deal with the matter, "the decree may show that any collection thereof will be a matter between Brooks & Patton, and whoever it is to be recovered from—the A & P, presumably." The appellants have not shown that there was error in the decree in this respect.

The decree appealed from is

*Affirmed.*