COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Beales, Russell and AtLee
Argued at Fredericksburg, Virginia


ADRIENNE PEDERSON

v.      Record No. 1178-15-4

SHAWN D. PEDERSON                                     MEMORANDUM OPINION* BY
                                                     JUDGE WESLEY G. RUSSELL, JR.
ADRIENNE PEDERSON                                         AUGUST 2, 2016

v.      Record No. 2093-15-4

SHAWN D. PEDERSON


                    FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                                David S. Schell, Judge

             Kimberley Ann Murphy (Lisa M. Campo; Hale Ball Carlson
             Baumgartner Murphy, PLC, on briefs), for appellant.

             Melanie Hubbard (Malinowski Hubbard, PLLC, on briefs), for
             appellee.


        In this consolidated appeal,[1] appellant wife challenges provisions of the parties' final decree

of divorce pertaining to the circuit court's equitable distribution award and orders regarding certain

military retirement/insurance issues.  She also challenges the subsequently entered qualified

domestic relations orders (QDROs) relating to each party's military pension.  For the reasons stated

below, we affirm the rulings of the circuit court.

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] Appellant filed a third appeal after the trial court declined to consider her motions for
reconsideration of the QDRO issues.  That appeal, Record No. 0062-16-4, was dismissed for
failure to pay the filing fee.

BACKGROUND

On appeal, we review the evidence in the favor of husband, the prevailing party below. Niblett v. Niblett, 65 Va. App. 616, 622, 779 S.E.2d 839, 842 (2015).[2] So viewed, the evidence demonstrates that the parties were married on October 27, 1997. Two children, both still minors, were born of the marriage. Husband served as an active-duty member of the United States Air Force throughout the majority of the marriage. Wife also was active-duty when they married, but entered the reserves shortly after their first child was born, after three years of marriage, and intermittently returned to active-duty status during the marriage; she was a colonel in the Air Force Reserves when the parties separated.

Significant marital problems began to arise in 2009, when wife accused husband of having an affair with a subordinate. Husband was stationed in North Carolina at the time, but wife stayed with the children in Washington, D.C., where she was working and taking classes. During this time, wife did not visit husband in North Carolina, and husband traveled to D.C. to see the children. Wife refused to visit North Carolina to watch the air show husband had organized or to see his final flight.

Additionally, there was evidence that wife was less than fully supportive of husband's career. Evidence established that she reported alleged misconduct by her husband to Air Force authorities, but that the authorities were unable to confirm the allegations after investigating them. Furthermore, husband turned down a promotion as a Wing Commander that would have required

---

[2] Although wife was awarded the divorce on the desertion grounds she alleged, husband prevailed on the substantive equitable distribution and QDRO issues that are at issue in these consolidated appeals.

the family to relocate. Evidence established that turning down the promotion was likely harmful to husband's career and that he turned it down because the "family" refused to relocate.[3]

During the marriage, husband discovered e-mail correspondence between wife and his commanding officer. The correspondence was suggestive of an inappropriate romantic relationship between wife and husband's commanding officer.

In the wake of these difficulties, husband removed himself from the marital residence on August 13, 2013. Wife filed a complaint for divorce on desertion grounds on November 1, 2013; husband filed a cross-complaint for divorce alleging cruelty on November 25, 2013. Both parties amended their complaints to include allegations of adultery. On August 22, 2014, a consent *pendente lite* order was entered concerning child custody and visitation and child and spousal support.

While the divorce action was pending, husband retired from the Air Force after twenty-four years of service, on September 1, 2014. Less than three weeks later, on September 18, 2014, he suffered a ruptured cerebral aneurysm. On October 16, 2014, husband was declared an incapacitated adult; his mother was appointed as a co-guardian with an attorney, Mr. Labowitz, who also was appointed as his conservator. Mr. Labowitz, as conservator of husband's estate, was granted all powers granted to conservators "under Code Section 64.2-2000 et seq. of the . . . Code of Virginia . . . ." The matter, which originally had been set for trial on October 28, 2014, was continued to March 2015.

---

[3] Wife makes much of the fact that the evidence established that the "family" as opposed to "wife" refused to relocate. Given that the minor children could not refuse to move, the factfinder was free to conclude that wife was the driving force that led husband to refuse the promotion.

Because of his incapacity, husband did not participate in the proceedings, but his conservator was present, having been specifically empowered by court order to "change [husband's] marital status . . . ."

At trial, evidence was adduced regarding the parties' marital property, including real estate, automobiles, investment accounts, and retirement assets. In addition, evidence established that husband was the insured under life insurance policies obtained as a result of his service in the Air Force. Regarding the policies, wife was the beneficiary with the children listed as secondary beneficiaries. In court, when asked "Are you asking the court to retain – that [the] insurance be maintained as long as he has a child support obligation?", wife responded, "Yes." She sought only periodic child support consistent with the child support guidelines.

At the conclusion of the evidence, the court noted, "this really is a tragic case, it's a tragic circumstance. The health of the father is part of that, the dissolution of the marriage is part of that, and the impact on the children." The court continued, noting that "this is not a simple division of property between two people who just don't get along. It's much more serious than that, and it's a much more dire circumstance."

The circuit court announced its rulings from the bench on March 13, 2015. The court expressly noted, "During trial I observed the witnesses and the demeanor of the witnesses and made determinations as to their credibility," and stated that "I have considered each and every statutory factor in § 20-107.3(E) of the Code of Virginia as to which evidence was presented." The court added, "If I don't mention a factor, it's not because I haven't considered it[;]" and the court invited the parties to ask any questions related to the weight he accorded the factors.

The circuit court then relayed its findings as to all eleven statutory factors. The circuit court specifically found that, at the time of the distribution hearing, the parties had been married for fifteen years and ten months. With respect to the parties' contributions to the well-being of the

family and to the acquisition of the marital property, the circuit court found that "husband made most of the monetary contributions . . . although wife did contribute financially" and "the parties equally contributed to the nonmonetary well-being" of the family.

The court noted that both parties were forty-six years old and found that while wife was in good health and able to work, husband "is in terrible health." The court specifically found that husband "suffered a ruptured brain aneurysm and is unresponsive. He is unable to work . . . nor is he able to communicate in any meaningful way . . . . [I]t appears that he's going to be in an institution for some time to come." In contrast, wife testified at trial that she soon would begin a job that would pay her in excess of $100,000 per year.

The court also considered the circumstances pertaining to the termination of the marital relationship, crediting husband's desertion as the "ultimate circumstance," but including "[w]ife's attitude towards her husband, her attitude towards his career" as a contributing factor. The court also found that "her demanding nature towards her husband did contribute to the dissolution of this marriage."

The court relied on the "joint ED schedules" in assessing the factors associated with acquisition of specific property and the debts and liabilities of the parties. The court noted that the marital home constituted their largest debt and least liquid asset. Despite finding "no significant evidence on th[e] factor," the court considered the tax implications of selling the house, dividing the retirement plans, and ordering child support. Although some evidence was presented regarding dissipation of marital assets, the court found that neither party was able to show any waste by the other. With respect to any other factors, the court commented, "[T]here's nothing that the court finds significant to put into that slot at this time."

After relaying his findings in relation to the statutory factors, the circuit court addressed the specific items of the parties' property. The court expressed that it was "going to go through these

properties and divide them pursuant to the equitable distribution statute. In making this division, I am considering all the factors I just went through . . . ." For the most part, the circuit court ordered that the parties' marital assets and debts be divided equally.

Exceptions were made for certain items. For example, regarding any "reasonable and necessary unreimbursed medical and dental expenses," husband was found to be responsible for ninety-two percent of such expenses. Furthermore, as it regards the Individual Retirement Accounts of the parties that constituted marital property, the parties were allowed to keep the accounts that were in their individual names, resulting in an award to wife of over sixty percent of such marital assets.

The circuit court also deviated from an equal division regarding the marital share of husband's military pension. In addressing husband's military pension, the court stated, "[t]he evidence in this case does indicate to the Court that certain actions taken by the wife were detrimental to the husband's military career. Some demands she made on him in terms of placement and what assignments he took were detrimental." The court further noted that "the husband's present medical condition is something the court can consider;" and the court concluded, "under those circumstances and in light of everything else that's present in this case, 55 percent of the marital share will be awarded to husband, and 45 percent will be awarded to wife." The court also considered the statutory factors with respect to spousal support and awarded wife a reservation of support for half the length of the marriage.

In a letter opinion dated March 24, 2015, the circuit court found husband's monthly gross income to be $11,813 and wife's income, prior to her beginning her new position, to be $1,059. The cost of medical insurance paid by wife was found to be $46 per month. The amount of child support was then calculated pursuant to the guidelines. In setting the amount at $1,747 per month, the court determined that "no modification of the presumptive amount is appropriate at this time."

The court stated that this ruling was to be incorporated into the final decree and made the award retroactive to the date of the initial complaint. The court explicitly denied wife's "request that the father maintain his present life insurance naming wife as beneficiary as long as a child support obligation exists[.]"

The matter came before the court again on May 15, 2015, for entry of a final decree. Wife sought inclusion of a provision regarding husband's life insurance. Specifically, she asked that husband be ordered to continue to maintain her as the beneficiary of his life insurance policy. Wife also sought to be maintained as the beneficiary for her husband's Survivor Benefit Plan ("SBP"); she argued that it "should remain in effect so that if something happens to him, that major asset is not totally lost because it otherwise would be." The court ruled:

> The life insurance is not ordered. I heard a lot of evidence in the trial. I did not order it. The father in this case, he can designate the children if he wishes, but the court does not feel that in this particular case, and this is an extraordinary case, that in this particular case it's appropriate. That ruling stands. [T]he survivor benefit plan, same rationale applies. It was not addressed. It was not requested. The court did not contemplate ordering that. That is a choice of the retiree, and that's what I ordered and should remain in place.

On June 30, 2015, the court entered a final decree of divorce reflecting its rulings. The decree expressly provided that "[h]usband is under no obligation to elect or maintain the SBP coverage for the benefit of the wife." In addition, the decree directed that the terms of the divorce decree respecting the parties' retirement accounts, including husband's pension, be set forth in future orders, as appropriate.

Wife filed a motion to reconsider the final decree. On July 6, 2015, the court suspended the final decree to entertain wife's motion, which sought an order requiring husband "to designate [wife] as irrevocable beneficiary of the Survivor Benefits Plan and that the deadline be extended to 90 days for [wife's] payment to [husband] for his award of equity in the [marital home]." The

circuit court entered a suspending order, which provides that "THIS MATTER comes before the [c]ourt upon [wife's] Motion to Reconsider the final order entered on June 30, 2015[, and therefore,] IT IS ORDERED the June 30, 2015 order be suspended until further order of this [c]ourt."

On July 17, 2015, the circuit court held a hearing on the motion to reconsider. After hearing argument from the parties on the issues raised, the circuit court denied the motion. Regarding the SBP issue, the circuit court reasoned that "the issue . . . was not submitted to the court by evidence. I did not receive any evidence on the survivor benefit plan or the election by the retiree . . . . I can make no ruling as to providing that to the wife." The circuit court concluded by stating from the bench that "the motion to reconsider is denied. The Order of June 30 remains in full force and effect."

That same day, the circuit court entered its written order regarding the motion to reconsider. That order reads as follows:

> This matter came to be heard on the 17th day of July 2015[,] on [wife's] motion to Reconsider the Court's ruling of May 15, 2015 as reflected in the Court's order entered June 30, 2015. Upon the matters presented to the Court it is hereby ORDERED as follows: Thus, the Motion to reconsider is denied.

The written order contains no mention of the July 6, 2015 suspending order.

The division of each party's military retirement benefits necessitated the entry of QDROs. By agreement, the parties mutually retained a third attorney with experience drafting military QDROs to draft the qualifying orders. Based on representations made in the circuit court, the mutually agreed to attorney/draftsman communicated with the appropriate government agency, the Defense Finance Accounting Service (DFAS), regarding the particulars of the orders and drafted orders that complied with relevant plan requirements and with the final decree of divorce.

Husband sought to have the orders endorsed by wife, who was now representing herself. Wife refused to endorse the orders. As a result, the circuit court held a hearing on October 23, 2015 on the issue of the QDROs.

At the October 23, 2015 hearing, wife objected to the orders that husband sought to have entered and offered proposed QDROs of her own. She argued that husband's proposed orders should not be entered for several reasons: (1) they contained provisions that reflected the actual rulings of the circuit court in its final decree of divorce that she contended constituted error; (2) they contained provisions that were allegedly inconsistent with other correctly decided provisions of the final decree of divorce; (3) they did not require that she be continued as the beneficiary of husband's SBP; (4) they, for unspecified reasons, would not be accepted by DFAS; and (5) that changes had been made to the proposed QDROs so that they did not match what the mutually retained attorney/draftsman had produced.

After commenting that it no longer had jurisdiction over the substantive provisions of the final decree because the order had been entered months previously, the circuit court took the issue under advisement. After considering the various QDROs proposed by each party and the arguments made, the circuit court elected to enter the QDROs proposed by husband.

On the afternoon of November 13, 2015, twenty-one days after the circuit court had entered the QDROs, wife filed another motion to reconsider. In the motion, she asserted multiple grounds for setting aside the QDROs. Some of wife's arguments tracked the arguments she had raised at the hearing, while others she raised for the first time. For example, prior to filing the motion for reconsideration on November 13, 2015, wife had never asserted specifically that the QDROs contained an error regarding the creditable service points related to her military retirement accounts. Other than the filing of the motion with the clerk, there is no indication in the record that the circuit court was made aware of wife's motion to reconsider or the specific grounds therefor within

- 9 -

twenty-one days of the entry of the QDROs. In an order entered on November 18, 2015, the circuit court denied the most recent motion to reconsider on jurisdictional grounds.[4]

Wife now appeals aspects of both the final decree of divorce and the circuit court's entry of the QDROs. With respect to the final decree of divorce, wife presents the following assignments of error: (1) the trial court erred in not ordering husband to maintain wife as the beneficiary under his SBP; (2) the trial court erred in not ordering husband to maintain wife as the beneficiary of husband's Army Air Force Mutual Aid Association life insurance policy and of his Disability Servicemen's Group Life Insurance policy; and (3) the trial court abused its discretion in awarding her only forty-five percent of the marital share of husband's military pension as opposed to fifty percent. With respect to the QDROs, wife asserts that the trial court erred in failing to include in the orders "customary language" and in including other language "not in compliance with Defense Finance Accounting Service requirements." Appellant additionally contends that the court failed to protect her award of husband's retirement from diminution in light of his potential receipt of disability payments in lieu of retirement payments.[5]

---

[4] Wife challenged the circuit court's jurisdiction determination in the now dismissed third appeal. See footnote 1, infra.

[5] Appellant also assigned error to the trial court's stating that she had waived any right to being designated as a beneficiary under husband's survival benefit plan, but has withdrawn that assignment of error based on a rereading of the pertinent language of the order. Accordingly, we do not consider it here.

ANALYSIS

I. Jurisdiction

As with any appeal, we first must conclude that we have jurisdiction over the appeal before we can address its merits.[6] Comcast of Chesterfield Cnty., Inc. v. Bd. of Supervisors, 277 Va. 293, 299, 672 S.E.2d 870, 872 (2009) ("[T]he question of jurisdiction is one for the determination of the appellate court only.  Before the merits of this case can be considered, [this Court] must determine whether it has jurisdiction." (internal quotation marks and citations omitted)); see also Kotara v. Kotara, 55 Va. App. 705, 707, 688 S.E.2d 908, 909 (2010).

Pursuant to Code § 17.1-405(3), we have jurisdiction to hear appeals involving "[a]ny final judgment, order, or decree of a circuit court" in domestic relations cases.  A final order is one that "disposes of the whole subject[,] gives all the relief that is contemplated, and leaves nothing to be done by the court . . . .  On the other hand, every decree which leaves anything in the cause to be done by the court is interlocutory as between the parties remaining in the court." Comcast, 277 Va. at 301, 672 S.E.2d at 873 (alteration in original) (quoting Dearing v. Walter, 175 Va. 555, 561, 9 S.E.2d 336, 338 (1940)).  Indeed, "[i]f 'further action of the court in the cause is necessary to give completely the relief contemplated by the court, the decree is not final but interlocutory.'"  de Haan v. de Haan, 54 Va. App. 428, 437, 680 S.E.2d 297, 302 (2009) (quoting Brooks v. Roanoke Cnty. Sanitation Auth., 201 Va. 934, 936, 114 S.E.2d 758, 760 (1960)).

Consistent with Rule 1:1, the circuit court's June 30, 2015 order clearly was intended to be a final order.  It granted the divorce and divided the parties' property through equitable

---

[6] Because the issue was not raised by either party, we specifically requested that the parties be prepared to address the jurisdictional issue at oral argument.  Although not dispositive, both parties argue that the June 30, 2015 order is a final order and that the circuit court's July 17, 2015 order was sufficient to lift the suspension imposed by the July 6, 2015 order.

distribution.[7]  Absent the subsequent entry of the July 6, 2015 suspending order, there would be no question that the June 30, 2015 order was an appealable final order; however, the finality of the June 30, 2015 order was interrupted by the entry of the suspension order on July 6, 2015.

As the Supreme Court has recognized,

> [t]he running of the twenty-one day time period prescribed by Rule 1:1 may be interrupted only by the entry, within the twenty-one day time period, of an order modifying, vacating, or suspending the final judgment order.  Neither the filing of post-trial or post-judgment motions, nor the trial court's taking such motions under consideration, nor the pendency of such motions on the twenty-first day after final judgment, is sufficient to toll or extend the running of the twenty-one day time period of Rule 1:1.

Super Fresh Food Mkts. of Va. v. Ruffin, 263 Va. 555, 560, 561 S.E.2d 734, 737 (2002) (citations omitted).

In Super Fresh, the Supreme Court emphasized that, to suspend the operation of an otherwise final order, the circuit court must utilize the specific language of Rule 1:1 because "only an order . . . that *clearly and expressly* modifies, vacates, or suspends the final judgment will interrupt or extend the running of that time period so as to permit the trial court to retain jurisdiction in the case."  Id. at 563-64, 561 S.E.2d at 739 (italics added, other emphasis in original).

Consistent with Rule 1:1 and Super Fresh, the July 6, 2015 order clearly and expressly suspends the June 30, 2015 order.  Thus, the issue before us is whether the circuit court's July 17, 2015 order denying the motion to reconsider reinstated the June 30, 2015 order as a final order.

---

[7] That QDROs still needed to be entered did not prevent the June 30, 2015 order from being a final order.  Newsome v. Newsome, 18 Va. App. 22, 25-27, 441 S.E.2d 346, 348-49 (1994); see also Code § 20-107.3(K)(4).

We recognize that, while not requiring any specific words to reinstate a suspended final order, the Supreme Court has noted "that a judgment which has been properly vacated or suspended under Rule 1:1 does not become a final judgment thereafter without a subsequent order confirming it as originally entered or as modified." Id. at 564, 561 S.E.2d at 739. Although the July 17, 2015 order denying the motion to reconsider does not "clearly and expressly" lift the suspension, said order, when read in conjunction with the July 6, 2015 suspending order, is sufficient to reinstate the June 30, 2015 order as a final order.

The July 6, 2015 suspending order notes that the matter before the circuit court (and thus the reason for suspending the final order) is wife's "Motion to Reconsider the final order entered on June 30, 2015." It does not set a fixed period of time for the suspension, but rather, provides that the final order is suspended until "further order of th[e] [c]ourt," which, in context, refers to the order disposing of the previously referenced motion to reconsider. Ultimately, this would prove to be the July 17, 2015 order.

Furthermore, the order denying the motion to reconsider references the June 30, 2015 final order. Specifically, it notes that the matter before the court is wife's "motion to Reconsider the Court's ruling of May 15, 2015 *as reflected in the Court's order entered June 30, 2015*." (Emphasis added). Thus, when the order provides that "the Motion to reconsider is denied . . . ," the best reading is that the prior final order is once again in effect.

Although the better practice would have been for the July 17, 2015 order to address the order of suspension explicitly or to include the circuit court's statement from the bench that "[t]he Order of June 30 remains in full force and effect . . . ," the provisions of the two orders, read together, are sufficient to make clear that the circuit court's denial of the motion to reconsider had

- 13 -

the effect of confirming the June 30, 2015 order as a final order. Accordingly, we have jurisdiction over the appeal and now turn to the issues raised by wife.[8]

## II. Wife's Challenges to the Equitable Distribution Award

"On appeal, a trial court's equitable distribution award will not be overturned unless the Court finds 'an abuse of discretion, misapplication or wrongful application of the equitable distribution statute, or lack of evidence to support the award.'" Wiencko v. Takayama, 62 Va. App. 217, 229-30, 745 S.E.2d 168, 174 (2013) (quoting McIlwain v. McIlwain, 52 Va. App. 644, 661, 666 S.E.2d 538, 547 (2008)).

Equitable distribution is governed by Code § 20-107.3. Subsection C provides that "[t]he court may, based upon the factors listed in subsection E, divide or transfer or order the division or transfer, or both, of jointly owned marital property, jointly owed marital debt, or any part thereof." Subsection E, in turn, delineates eleven factors for a circuit court to consider in dividing a divorcing couple's marital debts and assets.

In the instant case, the record is clear that the circuit court reviewed the factors specified in Code § 20-107.3(E) in reaching its decisions regarding equitable distribution. The circuit court expressly stated that it had considered all eleven factors and then reviewed its thought process regarding each factor. Finally, it invited the parties to inquire if either had any questions regarding the relative weight the circuit court had given each factor.

Wife challenges three aspects of the circuit court's equitable distribution award. We address each in turn.

---

[8] We recognize that "trial courts speak only through their written orders[,]" and therefore, the circuit court's statement from the bench regarding the June 30, 2015 order cannot provide the basis for our conclusion. Temple v. Mary Washington Hosp., Inc., 288 Va. 134, 141, 762 S.E.2d 751, 754 (2014). The statement, however, does explain why the parties proceeded as they did regarding the appeal.

A.  Maintenance of wife as the beneficiary of husband's SBP

In her first assignment of error, wife alleges that the circuit court erred by not ordering husband to maintain wife as the beneficiary of his SBP.  In support of her argument, wife cites to state and federal statutes that *allow* a circuit court to order a party to maintain a spouse as the beneficiary.  See, e.g., Code § 20-107.3(G)(2) ("To the extent permitted by federal or other applicable law, the court may order a party to designate a spouse or former spouse as irrevocable beneficiary during the lifetime of the beneficiary of all or a portion of any survivor benefit or annuity plan of whatsoever nature, but not to include a life insurance policy.") and 10 U.S.C. § 14500(f)(4) ("A court order may require a person to elect (or to enter into an agreement to elect) under [an SBP] to provide an annuity to a former spouse (or to both a former spouse and child).").

Although wife clearly is correct that these statutes authorized the circuit court to order that she be maintained as the beneficiary of husband's SBP, it is equally clear that nothing in the statutes or other authority cited by wife *required* the circuit court to do so.  At oral argument, wife candidly conceded that no federal or state statute imposes such a requirement and that, but for husband's incapacity, the circuit court would have been free to reserve to husband the decision as to whether she should continue as beneficiary of his SBP.  Thus, her sole argument in support of this assignment of error is that it was an abuse of discretion for the circuit court to leave the decision to husband because he was incapable of exercising any discretion on his own behalf.

Specifically, she argues that the circuit court "appears to have forgotten or ignored the fact that [husband] was declared an incapacitated adult . . . and found unable to transfer assets or enter into contracts."  She contends it was an abuse of discretion for the circuit court "to defer [the decision] to an individual incapable of making a decision . . . ."

- 15 -

This argument ignores the very reason conservators are appointed—to stand in the shoes of the incapacitated person and make decisions that the person would otherwise be making. Because it would not have been error for the circuit court to reserve the decision of whether to maintain wife as the SBP beneficiary to husband had he not been incapacitated, it was not error for the court to do so with an understanding that the decision would be made by the conservator on husband's behalf.[9]

Wife argues that allowing the conservator to make the decision is improper because he may prefer husband's interests to those of the couple's children. We note that the conservator's powers and duties are governed by statute. Specifically, the conservator is required to "exercise reasonable care, diligence, and prudence and shall act in the best interest of the incapacitated person." Code § 64.2-2021(A). Furthermore, "[t]o the extent known to him, a conservator shall consider the expressed desires and personal values of the incapacitated person." Id. In managing husband's estate, the conservator must use the income and corpus of the estate for "maintenance of [husband] *and of his legal dependents*." Code § 64.2-2021(B) (emphasis added). Additionally, a conservator's statutory powers include the ability to "maintain life, health, casualty, and liability insurance for the benefit of the incapacitated person or *his legal dependents*." Code § 64.2-2022(A)(3) (emphasis added). In short, the statutory powers and

---

[9] Wife makes much about the circuit court's reference to the decision belonging to husband, going so far as to state that this supports the conclusion that the circuit court "appears to have forgotten" that husband was incapacitated. It is clear from the record that the circuit court was acutely aware of husband's incapacity. The court was presented with the order declaring husband incapacitated, heard from his conservator, and specifically found that husband "is unresponsive. He is unable to work . . . nor is he able to communicate in any meaningful way . . . it appears that he's going to be in an institution for some time to come." Clearly, the circuit court was aware of husband's incapacity and, in context, any statements that choices or decisions belonged to husband were statements that the conservator would exercise the choice on husband's behalf.

- 16 -

duties of the conservator are such that there was no reason for the circuit court to assume that leaving the decision to husband/conservator was likely to work a hardship on the children.[10]

Ultimately, the circuit court appropriately conducted the equitable distribution analysis required by statute and reached a permissible conclusion regarding the SBP. Finding no abuse of discretion, we affirm the judgment of the circuit court regarding wife's continuing status as the beneficiary of husband's SBP.

B. Maintenance of wife as the beneficiary of husband's life insurance policies

In the circuit court, wife sought an order requiring husband to maintain her as the beneficiary of his life insurance policies. Although she couched her argument in terms of protecting the children's interest in continuing financial support from husband, she only asked that she (as opposed to the children) be the beneficiary of the life insurance policies. Accordingly, she appropriately limited her assignment of error in this Court to the argument that the "trial court erred in not ordering [that wife] be maintained as the beneficiary of [husband's] . . . life insurance polic[ies], of which the premiums were paid for with marital funds, and after [wife] requested to be maintained as the beneficiary . . . ."

Ultimately, wife argues that the circuit court erred in failing to honor her request regarding the life insurance policies for the same reason she claims that the circuit court erred in its decision regarding the SBP. Specifically, she argues that "it is clear for the [same] reasons argued [regarding the SBP] that the trial court abused its discretion in leaving the decision of the designation of beneficiaries to [husband] who in light of his medical condition, is wholly unable to exercise any choice or decision." Given the identity of the arguments, it logically follows that,

_____

[10] At oral argument, wife candidly conceded that there was no evidence introduced that supported a conclusion that the conservator had plans to act contrary to the interests of the children. Her argument in this regard was entirely theoretical.

- 17 -

for the same reasons, the circuit court did not err in its ruling regarding the life insurance policies.

Even if the logic of our holding on the SBP issue did not dictate such a result, other factors would require us to affirm the circuit court regarding the life insurance policy. Specifically, the circuit court could not order that wife be maintained as the beneficiary of the life insurance policies because the court was barred by statute from doing so. As noted above, Code § 20-107.3(G)(2) provides that, in fashioning an equitable distribution award, a circuit "court may order a party to designate a spouse or former spouse as irrevocable beneficiary during the lifetime of the beneficiary of all or a portion of any survivor benefit or annuity plan of whatsoever nature, but *not to include a life insurance policy*." (Emphasis added). As we previously have recognized, this language prohibits the circuit court from granting the relief requested by wife. See Lewis v. Lewis, 53 Va. App. 528, 542-43, 673 S.E.2d 888, 895 (2009).

On appeal, wife apparently recognizes this difficulty and attempts to reframe the argument, arguing that the final decree is flawed because it "is entirely devoid of any requirement or obligation that [husband] maintain his life insurance policies with [wife] *and/or the children designated as beneficiaries*." In support of arguing that the children could/should have been made beneficiaries, wife cites Code § 20-108.1(D), which provides that a "court shall have the authority to order a party to (i) maintain any existing life insurance policy on the life of either party provided the party so ordered has the right to designate a beneficiary and (ii) designate a child or children of the parties as the beneficiary of all or a portion of such life insurance for so long as the party so ordered has a statutory obligation to pay child support for the child or children."

Although the circuit court had the authority to order that the *children* be made the beneficiaries of the life insurance policies for the length of the child support obligation, wife

never asked the circuit court to enter such an order.[11]  She only requested that *she* be maintained as the beneficiary.  See Irwin v. Irwin, 47 Va. App. 287, 298 n.10, 623 S.E.2d 438, 444 n.10 (2005) ("Courts can only grant relief requested.").  Because wife did not raise the issue of the children being made beneficiaries of the life insurance policies in the circuit court, we will not consider the argument on appeal.  Rule 5A:18.[12]

C.  Division of husband's military pension

In her final challenge to the circuit court's equitable distribution award, wife asserts that the circuit court erred in its division of husband's military pension.  Specifically, she argues that the circuit court "abused its discretion in awarding [her] only forty-five percent . . . of the marital share of [husband's] military pension as opposed to fifty percent . . . of the marital share . . . ."

The largest obstacle to wife's argument is our oft repeated recognition that equitable distribution does not mean equal distribution.  See, e.g., Sfreddo v. Sfreddo, 59 Va. App. 471, 486, 720 S.E.2d 145, 153 (2012); Budnick v. Budnick, 42 Va. App. 823, 838, 595 S.E.2d 50, 57 (2004); Watts v. Watts, 40 Va. App. 685, 702, 581 S.E.2d 224, 233 (2003).  "So long as the court considers each factor [set forth in Code § 20-107.3] and the evidence supports the conclusions reached by the trial court, we will not disturb the award on appeal merely because it is unequal."  Artis v. Artis, 10 Va. App. 356, 362, 392 S.E.2d 504, 508 (1990).  Thus, if a reasonable factfinder could have reviewed the statutory factors and concluded that a 55-45 division of the marital share was equitable, we must affirm the circuit court.

---

[11] Even if wife had requested such relief, nothing in the statutory scheme requires a circuit court to enter such an order.

[12] Furthermore, we note that wife's assignment of error appropriately is limited to the relief requested in the circuit court, i.e., that she be maintained as the beneficiary on the life insurance policies.  Consequently, the issue of the children being made beneficiaries of the policies is outside the scope of the assignment of error and not a proper subject of this appeal.  Pope v. Commonwealth, 60 Va. App. 486, 514, 729 S.E.2d 751, 765 (2012) (holding that "our review is limited to those errors specifically assigned by an appellant").

As noted above, the circuit court clearly considered all of the statutory factors. Husband's incapacitated state, in and of itself, would have been more than sufficient to justify the circuit court awarding him fifty-five percent of the marital share of his pension. Coupled with other evidence before the court (wife's interactions with husband's superior officer, the fact that husband was unemployable, while wife was about to start a job paying in excess of $100,000 a year, etc.), the circuit court's determination appears even more reasonable.

Wife attaches great significance to the circuit court's conclusion that some of wife's actions were detrimental to husband's career. She argues that her "own testimony contradicts" this conclusion. Of course, the circuit court was under no obligation to credit wife's testimony, and the circuit court's rejection of such testimony binds us on appeal. Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) ("[T]he trier of fact ascertains a witness' credibility, determines the weight to be given to [his] testimony, and has the discretion to accept or reject any of the witness' testimony."). Evidence related to wife's inappropriate e-mail exchanges with husband's superior officer, her reports to authorities of alleged professional misconduct by her husband (reports that ultimately were deemed unsubstantiated by those authorities), and the circumstances surrounding husband's decision not to accept the promotion to Wing Commander provided a sufficient basis for a reasonable factfinder to conclude that wife was less than supportive of husband's career.

Given the record and the standard of review, we cannot say that the circuit court's equitable distribution award was not based on evidence in the record or was the result of a failure to appropriately consider the statutory factors. Accordingly, we affirm the circuit court's equitable distribution award. Wiencko, 62 Va. App. at 229-30, 745 S.E.2d at 174.

III. Entry of the QDROs

Wife also alleges that the circuit court erred by entering the QDROs proposed by husband. Specifically, she argues that the QDROs fail to contain language that such orders normally contain, that the QDROs, as drafted, contain errors that will cause them to be rejected by DFAS, and that the QDROs fail to contain language that protects her interest in husband's "military retirement in the event [he elects] to receive disability in lieu of retirement." We address each argument in turn.

A. Absence of customary language

Wife argues that the circuit court committed reversible error by entering QDROs "that omitted language customarily recognized by DFAS." Wife did not and does not contend that what she characterizes as "customary language" is in any way required by state or federal law or that DFAS will reject the orders because they lack the purportedly "customary language." In fact, she cites no authority whatsoever for the proposition that the omission of such language in any way constitutes error.

The lack of authority prevents us from considering the issue on appeal. As we previously have noted, "Rule 5A:20(e) requires that an appellant's opening brief contain '[t]he principles of law, the argument, and the authorities relating to each question presented.' Unsupported assertions of error do not merit appellate consideration." Fadness v. Fadness, 52 Va. App. 833, 850, 667 S.E.2d 857, 865 (2008) (some internal quotation marks and citations omitted). Accordingly, we will not consider wife's argument regarding so-called "customary language."[13]

B. Erroneous language in QDROs

In the circuit court, wife made a generalized objection to the QDROs proposed by husband. She argued that "DFAS will not accept [the QDROs] as they are written." On appeal, she argues

---

[13] The lack of supporting authority is not surprising. It is hard to imagine a scenario in which the failure to include language that is not required to be included could, without more, constitute error.

that the QDRO regarding *her* military retirement pay does not include required language regarding service points related to her service in the reserves, and therefore, the circuit court entered "an order that pursuant to DFAS regulations will be rejected."

Although she submitted draft orders of her own, wife never informed the circuit court of her specific position that DFAS would reject husband's proposed QDRO *because* of the alleged error in language regarding service points related to her service in the reserves. Because she did not bring this specific objection to the circuit court's attention, we will not address it here.[14] Rule 5A:18.[15]

We recognize that, when the issue of the QDROs was argued in the circuit court, wife was appearing *pro se*. However, a *pro se* litigant "is no less bound by the rules of procedure . . . than a [party] represented by counsel." Church v. Commonwealth, 230 Va. 208, 213, 335 S.E.2d 823, 826 (1985); see also, Francis v. Francis, 30 Va. App. 584, 591, 518 S.E.2d 842, 846 (1999) ("Even *pro se* litigants must comply with the rules of court."). Accordingly, Rule 5A:18 bars our consideration of the specific argument wife now makes.

---

[14] Wife argues that she did raise this specific issue in the motion to reconsider the entry of the QDROs she filed on the afternoon of the twenty-first day after the circuit court entered the QDROs. As the Supreme Court has made clear, the mere filing of a motion to reconsider within the twenty-one-day period prescribed by Rule 1:1 is insufficient to preserve an issue for appellate review. Brandon v. Cox, 284 Va. 251, 256, 736 S.E.2d 695, 697 (2012). Here, the circuit court found that it did not have jurisdiction to consider the motion to reconsider because the twenty-one-day period had run before the court was able to rule on the motion. Because that ruling was challenged in wife's now dismissed third appeal, Record No. 0062-16-4, the law of the case doctrine prevents us from considering whether the circuit court's conclusion that it lacked jurisdiction was correct. Steinman v. Clinchfield Coal Corp., 121 Va. 611, 621-22, 93 S.E. 684, 687 (1917).

[15] Rule 5A:18 provides, in pertinent part, that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling . . . ." To the extent that wife is correct and DFAS ultimately rejects the QDROs despite the representation in the circuit court that DFAS had approved the draft QDROs, the circuit court will have the authority to address the issue at that time. Code § 20-107.3(K)(4).

C. Alleged failure to protect wife's interest in forty-five percent of the marital share of husband's military pension

Wife contends that the circuit court erred in not including language in its orders "to protect the full extent of the award to [her] of [husband's] military retirement in the event of an election [by husband] to receive disability in lieu of retirement." Wife argues that, as a result of the circuit court's equitable distribution award, she has vested rights in a portion of the retirement payments, and therefore, the court should have included language in the orders to prophylactically protect those rights against potential erosion.

Wife concedes that federal law grants husband the right to elect to receive disability benefits instead of military pension payments. She argues that because such an election would reduce the amount she would receive as part of her forty-five percent interest in the marital share of husband's military pension, the circuit court was *required* to include language in its order to protect the interest. Assuming without deciding that wife's arguments in the circuit court sufficiently preserved this issue, we disagree.

Issues related to a divorcing service member's potential election to receive disability benefits, which are not subject to equitable distribution in lieu of full pension payments, which are subject to equitable distribution, can be complex. See Lambert v. Lambert, 10 Va. App. 623, 627, 395 S.E.2d 207, 209 (1990). As we recently noted,

> there are grave problems with the trial court ordering husband not
> to waive his retirement for disability benefits . . . . "[A] state court
> [likely] cannot actually order a service member not to waive his
> military retirement benefits in favor of disability or other
> replacement benefits. Such an order probably violates federal
> law." 2 Brett R. Turner, Equitable Distribution § 6.10, at 67-68
> (3d ed. 2005 & Supp. 2015-2016) (citing Cunningham v.
> Cunningham, 615 S.E.2d 675, 681-82 (N.C. Ct. App. 2005);
> Freeman v. Freeman, 133 S.W.3d 277, 280 (Tex. App. 2003)).
> The court may "order the service member to *compensate* the
> former spouse for any harm caused by the election," but may not
> "order the service member not to make the election in the first
> place." Id. at 68.

Jones v. Jones, No. 0062-15-2, 2016 Va. App. LEXIS 29, at 13 (Va. Ct. App. Feb. 2, 2016).[16]

Thus, the circuit court had the authority to include language in the orders that provided for compensatory payments from husband if he effectively reduces her interest in the marital share of his pension by accepting disability benefits in lieu of pension payments. See generally Poziombke v. Poziombke, No. 1150-05-1, 2006 Va. App. LEXIS 61 (Va. Ct. App. Feb. 14, 2006).

As noted in a different context above, however, the circuit court having the authority to enter such an order does not mean it was error for the circuit court to decline to do so. Nothing in Virginia law requires the circuit court to enter an order prophylactically to protect against an event, the conversion of retirement payments to disability benefits, which may or may not occur. Accordingly, the circuit court did not abuse its discretion when it did not add such protective language to its orders.[17]

CONCLUSION

By their nature, divorce and equitable distribution cases involving military pensions and benefits are complex. Adding to the complexity of this case are the difficulties associated with husband's poor health and his lack of capacity to fully participate in his own right in the decisions that will have a lasting effect on him, his care, wife, and their children. Faced with a

---

[16] Unpublished opinions of this Court, while having no precedential value, are nevertheless persuasive authority. Otey v. Commonwealth, 61 Va. App. 346, 351 n.3, 735 S.E.2d 255, 258 n.3 (2012).

[17] This does not mean wife is without a remedy if husband makes an election that adversely affects any vested rights she has. She is free to seek redress by way of show cause if her rights under the court's equitable distribution award are frustrated by a unilateral decision made by husband. Cf. Hubble v. Hubble, No. 2015-01-4, 2002 Va. App. LEXIS 459, at 7 (Va. Ct. App. Aug. 6, 2002) ("A party's vested right under a court's decree may not be unilaterally altered by another party."). Alternatively, the parties could reach an agreement regarding how to proceed if husband elects to reduce his retirement pay in exchange for disability benefits.

complex case, the circuit court appropriately considered the evidence and conducted the review required by statute in reaching its decisions. Because the circuit court did not abuse its discretion in deciding the issues before it, we affirm its rulings.[18]

Affirmed.

---

[18] Husband seeks an award of "his attorneys' fees and costs in this cause for having to defend this appeal . . . ." Although husband has prevailed on every issue in the appeal, the circumstances surrounding husband's health status and their potential effect on the appropriate resolution of the issues in the divorce are such that we do not feel that an award of attorneys' fees against wife is justified. Accordingly, we deny husband's request for attorneys' fees and non-taxable costs. Cf. Estate of Hackler v. Hackler, 44 Va. App. 51, 75, 602 S.E.2d 426, 438 (2004).